Rudolph W. MONROE, Plaintiff-Appellant,

v.

Bertie MONROE, Defendant-Respondent.

Nos. 22508, 22516.

Kansas City Court of Appeals.

Missouri.

April 1, 1957.

Gresham, Boughan & Whipple, Walter J. Gresham, Kansas City, for appellant.

Carl H. Willbrand, Kansas City, for respondent.

CAVE, Judge.

This is a divorce proceeding. Plaintiff, the husband, filed petition for divorce. and defendant the wife, filed answer and cross bill. The trial resulted in a decree of divorce being granted to defendant on her cross bill, and an allowance of $545 and $100 attorney's fees. Plaintiff appealed from this judgment. Thereafter, defendant filed motion for suit money pending appeal, and after a hearing, the court allowed her $12.50 per week alimony, $250 attorney's fees and $100 suit money. Plaintiff appealed from this judgment. The appeals have been consolidated and will be disposed of by one opinion.

Plaintiff's petition charged the defendant with nagging, unreasonable jealousy, and with making false accusations that he gave money to, and associated with other women. The answer admitted certain formal allegations of the petition, but denied the indignities charged. The cross bill alleged the plaintiff was guilty of indignities of nagging, cruelty, cursing, associating with other women, and that the plaintiff had appropriated funds belonging to the defendant in the sum of approximately $3,000.

These parties were married on June 14, 1951. It was the second marriage for each. They lived together as husband and wife for about three months, but thereafter lived in the same house until 1955, at which time the defendant moved out. They lived in a rented house and the plaintiff owned the household goods therein, which had been accumulated during his prior marriage. The defendant, according to plaintiff, had

but $80 at the time of the marriage. About thirty days after the marriage, the parties borrowed $500 and purchased equipment for a beauty shop which the wife operated. The husband testified that there was nothing said or any agreement made relative to what was to be done with the profits from the shop. The wife testified that she brought the receipts home each Saturday, and placed the money in a dresser drawer, and that the following Monday her husband would deposit the money in his bank, except for about $3 which he gave her for change. The husband testified that she didn't bring all the money home, but retained a part of it. It is impossible to tell from the record what the profits were, if any. The wife testified that some weeks she would make as much as $30 or $40 and at other times only $12 or $14. The husband accused her of "juggling the figures, and I told her so". He stated that after about a year he found out that she had a bank account of about $900. She stated that this was a joint account with her sister, and that most of the money belonged to her sister.

In 1952, they purchased a residence at 1524 Michigan Avenue, Kansas City, for approximately $4,500. Title was taken in their joint names. The wife made the down payment of $600, and the balance was carried by a first and second mortgage. They did not intend to live in this property; it was to be operated as a rooming house.

A witness for the defendant testified that the plaintiff sought to employ her to manage the place for him as a "call house" or assignation house, but that she declined to do so, and he employed another woman. Plaintiff denied this, but did testify that he expected the rooms to be rented by the hour, day or week. In 1954, the city took this residence by condemnation and the value assessed at $3,285.34. A draft for that amount was issued in the joint name of plaintiff and defendant and delivered to them in the spring of 1955. Plaintiff asked his wife to endorse the draft and stated he would deposit it in his bank.

She declined to do so, and about one month later they both went to the defendant's bank and consulted one of the officers thereof. He declined to advise them on the division of the money. After some discussion, the plaintiff testified that he told his wife, "I am through. One of us is going to get a divorce. This is the end. * * * This is final. I'll assume all the mortgages". They had considerable argument concerning the division of the money. It is conceded by the plaintiff that his wife had made the original down payment of $600 on the property; that at another time she had loaned him $300, which he had not repaid; and at still another time she had loaned him $150 when he made a trip to Nebraska. There was further discussion about the amount each had paid on the mortgage, but finally they agreed that the plaintiff should receive from the sale of the porperty $1,888.59, and the balance would belong to the wife. The husband testified that from this discussion he was "under the impression that would take care of any former lawsuits or what not. I just thought it would give me a clean bill of sale.

"Q. Did you talk to her about whether it covered alimony and attorney's fees and all that? A. Everything.

"Q. Did you talk about whether this wiped out all alimony, attorney's fees and whether this was to be final or not? A. Yes.

"Q. Did she argue the matter? A. Very much so, and she was reluctant about signing the check until she conversed with the banker. He told both of us he could not afford to have anything to do with the affairs to be settled between ourselves, and at that point she endorsed the check."

As a part of this same conversation, the husband testified that he told his wife that she could operate the beauty shop until the divorce and after that "I am taking over". The wife testified that after considerable argument and discussion at the bank about

the division of the money, and what he owed her, she finally told him, "Go on and take what you want. You are taking my money, but go on and take it." She denied there was anything said about alimony or attorney's fees.

There is evidence that the husband borrowed money from different small loan companies for various purposes, but it appears that some, if not all of these notes, were also signed by the wife. He was also paying on a new automobile. It is evident that the husband was on the treadmill of time payments, but it is impossible to determine from this record even an approximation of the financial obligations of these parties, and it is not necessary to do so. The plaintiff admitted that in addition to the amount he received in the division of the draft, he also took all the household furniture, most of which he gave to the woman managing the house for him, and the remainder he gave to other persons. Apparently he took over the beauty shop after the divorce, as he stated he was going to do.

Concerning the charge in the petition that the wife "nagged" him, he testified that on one occasion when they were having an argument, she said "God damn you". When asked "What other nagging did she do besides that?", he answered, "That is all I can remember right now". He also stated that she falsely accused him of "running around with women and giving women my money".

The defendant testified on cross examination and without objection, that one Gloria Freeman had told her that she had seen the plaintiff, on many occasions, driving around with other women in his car. Gloria Freeman denied having made such a statement. It is in evidence that the plaintiff did not take his meals at his home for the last two or three years of the marriage, but boarded at his cousin's near by. The defendant stated that she had seen him come out of that boarding house with women on different occasions, and had seen him in his car with other women.

There is no explanation by the plaintiff as to why these parties ceased to live together as man and wife after about three months. He admitted that he had told his wife on different occasions that he did not care for her any longer; that he wanted a divorce; that he frequently told her he wished he had never married her; that it was the biggest mistake he had ever made; and stated that he still felt the same way about it.

The defendant testified that the plaintiff treated her like a stranger most of the time; that he frequently cursed and abused her, almost every week; that he was quarrelsome and always comparing her housekeeping qualities with those of his first wife; that she had seen him in his car with other women, but did not know the extent of their association; that when she first refused to endorse the draft for the sale of the property and deliver it to him, he stated, "I hope you drop dead". Concerning the final division of the draft, she stated that there was no discussion about the settlement being in lieu of alimony and attorney's fees, but that the discussion related to a fair distribution of the money in the light of funds she had advanced him from time to time; and that during their married life, she had advanced him approximately $3,000.

We are not concerned with the tangled financial affairs of these parties.

Plaintiff's first contention on appeal is that the court erred in granting the defendant a divorce on her cross bill because of the insufficiency of the evidence. There is no merit to this contention. Under the evidence, the court could not have done otherwise.

The second point urged is that the court erred in making monetary allowances to the wife because the parties had made a property settlement in contemplation of divorce. We have recited in some detail the evidence concerning the settlement, or division of the purchase price of the house, and it is perfectly apparent that the evi-

dence falls far short of establishing that the parties reached a settlement of all of their property rights and that the wife had relinquished any of her property rights as a wife. In support of his contention, the plaintiff cites State ex rel. Green v. James, 355 Mo. 223, 195 S.W.2d 669; Edmondson v. Edmondson, Mo.App., 242 S.W.2d 730; Johns v. Johns, 204 Mo.App. 412, 222 S.W. 492. The facts in those cases are so foreign to the evidence in this case that they are inapplicable and not controlling. They do announce certain general principles relative to a property settlement between a husband and wife, but the evidence must clearly and unequivocally establish that such a settlement was made before such general principles are applicable.

The judgment of divorce and the allowances made therein should be affirmed.

Concerning the appeal of plaintiff from the order and judgment allowing defendant alimony, suit money and attorney's fees pending appeal, which is case No. 22,516, we find that the plaintiff has not briefed this matter, and we will consider it abandoned. Consequently, the judgment in case No. 22,516 and the judgment in case No. 22,508 are in all respects affirmed.

All concur.