242 S.W.2d 730 (1951)
EDMONDSON
v.
EDMONDSON.
No. 21615.
Kansas City Court of Appeals, Missouri.
October 1, 1951.
*731 Robert L. Jackson, Kansas City, for appellant.
Dwight Roberts, Robert S. Burns, Kansas City, for respondent.
DEW, Judge.
From an order of the trial court sustaining a motion to quash an execution and an order sustaining a motion to quash a second execution on the same judgment, and also from orders overruling the plaintiff's application for an order nunc pro tunc and for attorney's fees, the plaintiff has appealed. The appeals from such orders have been consolidated.
These appeals, as so consolidated, were first taken to the Supreme Court, which court transferred the same to this court on jurisdictional grounds. Prior to the perfecting of the appeals the appellant under Section 130 of the Code, RSMo1949, § 512.060, applied to the Supreme Court for a special order permitting an appeal from the order sustaining the motion to quash the first execution and her application was granted July 10, 1950. Thereafter, while the appeals were still lodged in the Supreme Court the defendant, in his brief, moved for the dismissal of the appeals on the ground that the notice of appeal from the order quashing the first execution was out of time and that the Supreme Court, lacking jurisdiction of the appeals, was not the "appropriate appellate court" authorized by the code to grant the special order of appeal; that lack of culpable negligence and delay of the applicant was not shown; that a sufficient amount is not involved in the appeals to give the Supreme Court jurisdiction; that the plaintiff was married August 23, 1950. Since the transfer of the cause, the motion to dismiss the appeals is now pending in this court. The order of transfer from the Supreme Court to this court dated January 15, 1951, states that "This court is without jurisdiction to hear and determine this cause."
In ruling on the application for a special order permitting an appeal from the order of the trial court on January 28, 1950, sustaining the motion to quash the first execution, the Supreme Court, on July 10, 1950, after consideration of defendant's suggestions in opposition, found that the order complained of was entered within six months theretofore; that there was merit in the claim for a special order; that the delay was not caused by the plaintiff's culpable negligence, and the special order was issued. We shall consider here only the jurisdictional point made, namely, that the order permitting the appeal was not made by the "appropriate appellate court" (Code 130) and is void for want of jurisdiction of the cause.
It is apparent that the point raised presents a new situation under Section 130 of the Code, and calls for a construction of a part of it not heretofore judicially construed. On the face of the statutory requirements that the application for a special order permitting the filing of a notice of appeal out of time be made to and the order granting it be made by "the appropriate appellate court", it would reasonably appear that such court must be the court to which the appeal, if allowed, will be taken, and which will have jurisdiction of such an appeal if and when perfected. We cannot assume that the word "appropriate" is surplusage or meaningless. It certainly was not intended that such special order for appeal be allowed by one appellate court when the application shows on its face that the appeal, if allowed and taken, must be filed in another appellate court. For instance, if the application filed in a court of appeals of one district shows on its face that the appeal, if taken, would have to be filed in the Court of Appeals of another district, or in the Supreme Court, it would be clear that such application could not be entertained because the lack of jurisdiction of the appeal is then apparent and known to the court. In other words, if the want of jurisdiction over the appeal is manifest or can then be fully so determined from the application, the court so applied to is evidently not the "appropriate" appellate court as required by the statute.
However, unless clearly shown by the application, an appellate court can not *732 finally ascertain its appellate jurisdiction until the transcript is filed, and if it then determines that jurisdiction of the appeal is vested solely in another appellate court, the appeal should be transferred to the court having jurisdiction. Constitution of Missouri, Article 5, Section 11. But that salutary provision of the Constitution would be circumvented if the appeal had come up on a special order under Section 130 of the Code and the lack of jurisdiction of the appeal could not at the time be determined from the application or otherwise, and if such determination upon the later filing of the transcript should have the effect of invalidating the special order of appeal. The right of appeal in such case would thereby be destroyed regardless of the merits either of the application or of the appeal itself and without the court having had an opportunity to determine its jurisdiction of the appeal.
The purpose and spirit of both the code and the court rules require a liberal construction of procedural provisions. The code itself requires its provisions to be so "construed to secure the just, speedy, and inexpensive determination of every action." Sec. 2, RSMo1949, § 506.010. The right of appeal is provided for under Section 126, RSMo1949, § 512.020. Suspension of certain procedural provisions is authorized. Sec. 139, RSMo1949, § 512.150. The Supreme Court rules under the constitutional and statutory authority require their construction to be liberal to promote justice, to minimize the number of cases disposed of on procedural questions, and to facilitate and increase the disposition of cases on their merits. Rule 1.28. It is true that appeals are statutory and exist only when the statutes permit, but it is equally true that appeals are favored and statutes granting them must be liberally construed. Ferguson v. Board of Equalization, 350 Mo. 122, 127, 164 S.W.2d 925. Bearing these principles in mind in construing the intent of the Legislature in Section 130 of the Code, we conclude that, in the absence of intentional fraud upon the court or parties and when no want of jurisdiction is apparent in the application for a special order allowing appeal, the order made thereunder granting the same is not invalidated by the fact that when the appeal is later perfected the appellate court determines its lack of jurisdiction of the appeal. The motion to dismiss is overruled.
On January 10, 1949, plaintiff brought suit for divorce, alimony and attorney's fees. There were no children born of the marriage. On March 4, 1949, a divorce decree was granted to the plaintiff by default against the defendant, more particularly described later herein. Prior thereto, on January 28, 1949, the parties had entered into a contract for property settlement. Under the contract it was provided that in view of the separation of the parties and their intention not to reside together again as husband and wife, and in view of the pendency of the divorce case filed by the plaintiff, and for the purpose of settling all questions relative to their properties, independent of the merits or the disposition of said divorce case, or the action of either in respect thereto, and in consideration of the mutual covenants, the defendant would pay the plaintiff the "sum of two hundred dollars per month payable one hundred dollars on the first of the month and one hundred dollars on the fifteenth of the month for a period unending so long as party of the first part, Betty Edmondson, may live. It is agreed by and between the parties hereto and it is their intention that the permanency of this agreement shall not be changed or altered in any respect by a remarriage or a change of condition of either of the parties hereto." The contract further provided that such payments "shall be permanent, and for and in consideration of above permanent payments" the plaintiff would release the defendant from all claims to war bonds, savings account, bank account and moneys accumulated prior thereto. The defendant therein assigned to the plaintiff all of his right in certain household furnishings and effects and the plaintiff assigned to defendant any interest of hers in certain office fixtures, dental fixtures and supplies. It was further stipulated that the parties would execute proper deeds and other instruments to carry out the provisions and intent of the contract.
*733 The decree in the divorce action granted a divorce to the plaintiff and provided, in part, as follows: "It is further ordered and decreed that the defendant shall pay the plaintiff, for her support and maintenance, the sum of two hundred dollars per month, ½ of such two hundred dollars becoming payable on the first day of each month and 1/2 being payable on the 15th day of each month, such payments to start on the 15th day of March, 1949. This monthly payment shall be binding upon the defendant, his heirs, executors and administrators, and shall be a charge upon his estate. Said payments shall continue until, and if, plaintiff remarries, for the rest of her natural life. In entering this decree the court expressly adopts, ratifies and confirms a certain property settlement which has been entered into and signed by the plaintiff and defendant."
Defendant paid only three and one-half monthly payments and then ceased payments. On three of the checks he had written "For alimony." He took receipts, explaining they were for income tax purposes, deductions for alimony. Sometime prior to December 1,1949, an execution was issued returnable January 9, 1950. Previously, on October 19, 1949, the defendant was adjudged a bankrupt. In his application in the bankruptcy court his sole creditor listed was his former wife, the plaintiff, and the liability described was the sum of $32,083.00, based on the contract to pay her $200 a month so long as she may live, irrespective of remarriage or any other change of status in her life which agreement was alleged in said listing as having been approved March 4, 1949, by the Circuit Court of Jackson County, Missouri, in the divorce decree and award made therein in accordance with the terms of said contract.
On December 1, 1949, the defendant filed a motion in the present cause to quash the execution and the garnishment thereunder. The grounds therefor stated were that the defendant had been adjudicated a bankrupt and had listed in his schedule the judgment on which the execution was issued; that the plaintiff had been notified of a meeting of creditors in said bankruptcy proceedings and had attended the same in person and by attorney; that defendant had not yet been discharged in the bankruptcy proceedings; that the judgment in the divorce action was based on the written contract of property settlement, was therein approved, ratified and confirmed by the court, but that the judgment was not a judgment for alimony or maintenance because the payments therein provided were required for the natural life of the plaintiff; that the contract removes the right of the court to modify or change the payments provided for therein, regardless of the change of the status of the parties, such as remarriage; that the obligations of the judgment do not cease with the death of the defendant; that the judgment was beyond the power of the court to make as a judgment for alimony or maintenance; that the judgment purports to bind the heirs and executors of the defendant, provable against his estate for the expectancy of the plaintiff; that the judgment is void as an alimony or maintenance judgment; that on its face the judgment merely ratifies and approves the property settlement contract and is not an alimony and maintenance judgment; that the execution attempts to appropriate property of the defendant and his earnings subsequent to his adjudication in bankruptcy, and violates his immunity from execution for a dischargeable debt, which was discharged by the institution of the bankruptcy proceedings, and seeks to seize property he has or may acquire after his adjudication in bankruptcy.
On January 18, 1950, after having heard the above motion to quash the execution and having taken the same under advisement, the court sustained the motion. On February 8, 1950, the court overruled the plaintiff's motion to set aside its ruling sustaining the above motion to quash.
On April 6, 1950, the plaintiff filed a motion to correct nunc pro tunc the order of January 18, 1950, sustaining the motion to quash, the purport of which motion to correct, in view of a letter written by the court to counsel, not admitted in evidence, was to change its order sustaining the motion to quash the first execution to show that the court did not rule on the dischargeability of the judgment debt, but quashed the execution because the court believed the proceedings *734 should be under the contract, rather than under the divorce judgment. Plaintiff also filed on May 5, 1950, her motion for attorney's fees. On August 15, 1950, plaintiff married one Frank M. Ball.
In the meantime a second execution and garnishment had been issued under the divorce decree, returnable to the September term, 1950. Prior thereto the plaintiff had filed a motion in the bankruptcy court to vacate the adjudication of the defendant as a bankrupt and to dismiss his petition for same, which motion was overruled on March 15, 1950, and defendant was ordered discharged. Thereafter on May 13, 1950, defendant filed a motion to quash the second execution incorporating the grounds set forth in his first motion to quash, and the further grounds that the bankruptcy court had overruled plaintiff's motion to set aside the adjudication of the defendant as a bankrupt, and granted defendant a final discharge therein, thereby determining that the indebtedness in question was dischargeable in bankruptcy and that the divorce decree was not a judgment for alimony, maintenance or support, the effect of which, it was alleged, was res judicata as to the dischargeability of plaintiff's claim. It was further alleged that the ruling of the court on January 18, 1950, sustaining the first motion to quash, not having been appealed from, was an adjudication of the issues. The motion prayed that the second execution and garnishment be quashed and held for naught, and that plaintiff be restrained from instituting further writs or proceedings in said cause.
On May 19, 1950, the court sustained the defendant's motion to quash the second execution, and overruled plaintiff's motions for an order nunc pro tunc and for attorney's fees. From these orders made on May 19, 1950, the notice of appeal was timely filed and, as stated, after her application to the Supreme Court for a special order of appeal from the order of the court sustaining the first motion to quash on January 18, 1950, notice of appeal as to such ruling was duly filed as permitted by the special order.
It is the contention of plaintiff that the property agreement is itself an obligation for support and maintenance; that it is nondischargeable under Section 17 of the Bankruptcy Act, 11 U.S.C.A. § 35; that if the contract was not intended to provide for the plaintiff's maintenance and support, then the decree providing for monthly payments therefor by the defendant is a separable and independent obligation, plainly not dischargeable in bankruptcy; that if the payment provisions of the decree are in addition to the contract, then an execution under the decree certainly is proper; that if such provisions of the decree are merely an adoption of the contract provisions, then the contract is merged into the judgment and the executions are valid.
Defendant asserts that his obligation to the plaintiff is based on their property agreement, which is dischargeable and was discharged in bankruptcy; that the contract and decree were both prepared by the plaintiff's counsel and, if ambiguous, the doubt, if any, of its construction should be resolved against the drawer thereof; that such parts of the subsequent divorce decree that purported to award the plaintiff biweekly payments for her support and maintenance "until and if plaintiff remarries, for the rest of her natural life", to "be binding upon the defendant, his heirs, executors and administrators and shall be a charge upon his estate", are inoperable and adjudged without any authority of law; that the mere approval of the contract in the decree did not transfer the obligation from the contract to the decree.
It is not claimed that the defendant is in default as to any of the specific items of personal property described and disposed of by the property agreement. The only default claimed is the failure to make full monthly payments awarded in the decree for which, it is contended, he is liable for the plaintiff's support and maintenance. It appears clear that if the defendant's liability for the plaintiff's alimony, maintenance or support arises out of valid provisions of the divorce judgment, then the executions were proper and were not affected by the proceedings in bankruptcy. "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, * * * except such as * * * (2) are liabilities for * * * *735 alimony due or to become due, or for maintenance or support of wife * * *." 11 U.S.C.A. § 35. It appears equally clear that if the defendant's liability for installment payments to the plaintiff for her support and maintenance arises solely out of the property agreement, an execution under the divorce judgment would not avail her to recover under that agreement. No execution on a judgment in one cause of action can serve to recover on a claim in another cause of action.
The vital question is: does the plaintiff have any valid judgment for maintenance and support on which to base her two executions described? If not, they were properly quashed for that reason alone. Several elements must be considered in determining the effect of the provisions for payments in the divorce decree. There is no valid judgment for alimony if (1) the prior property agreement is lawful and is conclusive as to provisions for support and maintenance, or (2) if the judgment by its terms exceeds the statutory authority.
It is no longer questioned that a husband and wife may, in contemplation of a separation and divorce, agree as to alimony, dower and other marital rights in their property. North v. North, 339 Mo. 1226, 100 S.W.2d 582, 584, 109 A.L.R. 1061. Prior to the North case, supra, it was held that such agreements were advisory only, and might or might not be regarded by the court in an ensuing divorce decree. Davis v. Davis, Mo.App., 196 S.W.2d 447, 451. In other words, the statutory power of the court to make orders touching the alimony and maintenance of the wife and to modify the same on a showing of changed conditions is now construed not to authorize a judgment, without the consent of the parties, for alimony in lieu of the lawful agreement of the parties therefor, nor any modification of the contractual obligations of the parties.
The trial court approved the property agreement. The contract does not state that it is in lieu of alimony but from its entirety it must be so construed. In consideration of "obligations assumed and mutual benefits accruing to each" therein, it provides payments for the plaintiff's support and maintenance for her life, independent of the disposition of the pending divorce case therein referred to, and irrespective of the remarriage or other change of condition of the parties, and to "settle all questions relative to their properties and finances between them." Exchange of interests in specific items of personal property are also made therein. Without the agreement, the plaintiff, later obtaining a decree of divorce from defendant for his fault, would be entitled to a judgment for alimony, subject to a modification from time to time by the court, and would retain dower and other marital interests in her husband's property. Sections 452.070, 469.200, R.S.Mo.1949; Crenshaw v. Crenshaw, 276 Mo. 471, 208 S.W. 249. There being no fraud shown, it appears that the agreement became lawful and binding on the parties.
Thus, when the divorce decree was rendered and provisions were there made for payments for plaintiff's support and maintenance, there existed a valid and conclusive agreement of the parties covering the subject. Therefore, there was no authority, without the consent of the parties, for any provisions in the decree for alimony, support or maintenance.
Furthermore, had any decree for alimony been authorized, the terms of the decree in that respect were not authorized. It does not follow that the provisions of a decree for support and maintenance are valid because a similar agreement of the parties therefor is valid. The decree purports to award installment payments to the plaintiff for support and maintenance in the same amounts as in the contract, and further provides the same to be payable to plaintiff regardless of remarriage "for the rest of her natural life", as does the contract, and further makes the payments a charge upon the defendant, his heirs, executors and administrators, and "a charge upon his estate". But such provisions are not allowable in a divorce decree as more fully explained hereinafter.
In the case of North v. North, supra, the wife obtained a decree of divorce from her husband and an award of alimony of *736 $500 a month so long as she remained single and unmarried. Prior to the decree and on the same day the petition was filed, she and her husband entered into a written contract adjusting all their property rights between themselves in which the husband agreed to pay the wife $500 a month until her death or remarriage, and to secure the same by a promissory note for $50,000 to be held by a third party under the terms of the agreement. It was provided that in consideration of the provisions of the contract the wife released the husband from obligation to pay alimony, support or maintenance, and to discharge his property from any claim arising out of the marital relation, including dower, alimony and support. Later the husband filed a motion to modify the alimony award on account of changed financial conditions. The Supreme Court held that the consideration of the contract was valid and the agreement was binding. It was urged that the agreement was merely a suggestion as to what the alimony should be and, although the award was for the same amount provided for in the contract and was approved by the decree, the decree was, nevertheless, a judgment for alimony, and subject to modification. This contention was overruled by the Supreme Court on the ground that the court had no authority to modify the contractual provisions made by the parties in lien of alimony and because the decree on its face showed that the award was not an award of alimony. The court said, 100 S.W.2d at page 585: "An award of monthly alimony to a wife so long as she remains single and unmarried might reach far beyond the death of the husband. Monthly alimony does not survive the death of the husband", citing 1 R.C.L. Sec. 80, pp. 933 and 934, and 19 C.J. p. 279, Sec. 635, 27 C.J.S., Divorce, § 240. 100 S.W.2d on page 586, the court said: "The provision in the decree awarding the wife $500 per month to continue so long as she remained single and unmarried (the same as that provided in the contract between the parties) justifies the conclusion that the decree was an approval of the contract, and not an award of alimony, because the court had no authority to make an award of alimony to continue so long as the wife remained single and unmarried, but did have authority to approve a contract between the parties containing that provision." It further said 100 S.W.2d at page 587: "The law recognizes the right of husband and wife to contract between themselves, and in case of separation, to settle and adjust all their property rights, including dower, alimony, and support. Where such contracts are free from fraud, collusion, or compulsion, and are fair to the wife, the courts have no right to disregard them." The court further said: "By the terms of the contract, the husband gave the wife an allowance which the court would have had no authority to give her as alimony. The fact that the court approved the contract by decreeing to the wife the same allowance which the contract gave her does not convert such allowance into alimony and thereby render it subject to future modification, although the decree calls it alimony."
Under the authorities we are compelled to hold that the liability of the defendant, if any, in the case at bar for installments for the support and maintenance of the plaintiff is such and only such as arises under the property agreement between the parties, and that the provisions of the divorce decree purporting to provide for installment payments for plaintiff's support and maintenance and the conditions therein prescribed pertaining to same were made without authority of law and are void. It follows that the executions in question, issued to recover such payments under the decree are without force and effect and are likewise void and were properly quashed for that reason, if for none other.
In view of our so holding it is not necessary for us to discuss the defendant's contention that the ruling on the motion to quash the first execution became res judicata, or the effect of the bankruptcy adjudication upon defendant's indebtedness to the plaintiff.
The invalidity of that part of the decree does not, of course, affect the validity of that separable part thereof dissolving the marriage in the plaintiff's favor. 49 *737 C.J.S., Judgments, § 450, pages 881-882; 31 Am.Jur., Section 405, p. 68; State ex rel. v. Evans, 176 Mo. 310, 325, 75 S.W. 914.
It is evident that since we have found that the provisions in the decree for payments to the plaintiff for her support and maintenance did not, under the circumstances, constitute a valid judgment for alimony or authorize the executions, the court did not err in overruling the plaintiff's motion for order nunc pro tunc. Nor is there any authority in law for the allowance by the court of attorney's fees to the plaintiff for services in connection with the executions issued under such judgment. Counsel for plaintiff so concedes, provided the decree is not a valid judgment for support and maintenance. The trial court properly overruled the plaintiff's motion for attorney's fees.
Lastly, we are requested by the appellant that, if it be held appellant is not entitled to an execution upon the decree, this court should require the trial court to show the executions were quashed merely on procedural grounds. This, of course, we cannot do because we have found that the executions were properly quashed on other grounds, as stated. The orders of the court appealed from are affirmed.
All concur.