In the Matter of James Larry EVANS, Bankrupt.

Barbara L. FISHER, Plaintiff,

v.

James Larry EVANS, Defendant.

Bankruptcy No. 78–00410–B–W–4.

United States Bankruptcy Court, W. D. Missouri, W. D.

Dec. 18, 1979.

Michael W. Manners, Independence, Mo., for plaintiff.

John S. Newhouse, Independence, Mo., for defendant bankrupt.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECREE OF NONDISCHARGEABILITY OF DEFENDANT'S INDEBTEDNESS TO PLAINTIFF AND JUDGMENT THAT PLAINTIFF SHOULD HAVE AND RECOVER THE SUM OF $2500 FROM THE DEFENDANT

DENNIS J. STEWART, Bankruptcy Judge.

The action at bar was previously submitted to the Honorable Jack C. Jones on the basis of a stipulation of facts filed herein on October 6, 1978. Before he could render the decision, Judge Jones died in November of 1979. Because the stipulation did not contain the express provision that it constituted the whole record of facts upon which the decision might be rendered,[1] the undersigned, on having the action reassigned to him subsequent to Judge Jones' final illness, entered his order on December 3, 1979, directing the parties hereto to

---

1. From the files and records in this case, it appears that the stipulation of facts was filed only after the court had, on July 28, 1978, issued an order setting a hearing on "Plaintiff's Complaint to Determine Non-Dischargeability of Debts" for September 6, 1978. There is no indication in the files and records that the hearing was not held. A letter dated August 8, 1978, from counsel for the plaintiff to the prior judge suggested that "the case be submitted on stipulated facts." Under date of August 14, 1978, the prior judge replied to the effect that "(t)here is no reason to have a hearing when all the facts can be stipulated in the record." Still, it does not appear that the hearing was cancelled, but rather continued by means of a "stipulation for continuance" filed herein on September 6, 1978, to the date of October 6, 1978, at which time the "stipulations of fact" was filed. Because it did not contain any statement that it contained *all* the facts and evidence submitted, however, the transferee court could not be certain that it was not filed in conjunction with or in the course of a contemporaneous hearing, the evidence of which should also be considered. Thus, it was necessary to issue the show cause order of December 3, 1979, before the undersigned could proceed with his deliberations on the case.

"show cause in writing within 15 days why the undersigned transferee judge should not render a decision based on the hearing before the transferor judge or else consent in writing to his doing so." The written consent of the plaintiff was filed herein on December 5, 1979.[2] The defendant appeared in the chambers of the court during the week of December 10, 1979, and orally consented to the undersigned's disposition of the matter.[3]

The question before the court, presented by the pleadings and by the stipulation of the parties, which the parties now plainly agree to make the basis of decision,[4] is whether an award of attorney's fees by a state dissolution court to the plaintiff, in proceedings concerning the dissolution of her marriage to the defendant,[5] is dischargeable in bankruptcy. The stipulation of the parties, which is adopted as the findings of fact and hence incorporated herein as fully and with such force and effect as if set out herein verbatim, leaves no doubt that the sum of $2,500.00 was thus awarded as attorney's fees and is a debt due the plaintiff from the defendant.

Plaintiff contends that the indebtedness is nondischargeable under the exception to discharge contained in section 17a(7) of the Bankruptcy Act for liabilities "for alimony due or to become due, or for maintenance or support of wife or child . . ." For case authority, the plaintiff appears chiefly to rely upon *In re Hargrove,* 361 F.Supp. 851, 853 (W.D.Mo.1973), wherein, in reliance on governing state law, the court held that "attorney's fees" awards were nondischargeable under the provisions of section 17a(7), *supra.* The reasoning in that case was as follows:

"The rationale for including attorney's fees and suit money within the term 'alimony' has been stated by the Missouri Court of Appeals as 'being alimony in the sense that it is allowed for the purpose of defraying the ordinary and necessary expenses of the wife in respect to her prosecution or defense of the action of divorce.' *Knebel v. Knebel,* 189 S.W.2d 464, 466 (Mo.Ct.App.1945). This rationale

---

**2.** In his letter to the undersigned, under date of December 5, 1979, counsel for the plaintiff stated in part as follows: "Your Honor's Order is written on the assumption that a hearing on the merits of this cause was previously conducted by Judge Jones prior to his untimely death. In fact, if your Honor will examine the Court's file in this matter, I believe you will find that on or about October 11, 1978, Stipulations of Fact were filed with the Court. Those Stipulations of Fact were entered pursuant to a letter I received from Judge Jones, dated August 14, 1978, suggesting that a hearing can be waived if the facts could be stipulated." However, as noted in note 1, *supra,* a review of the file had not ruled out the possibility that a hearing had been held or the possibility that one of the parties might contend that a hearing to supplement the stipulation might be necessary. Neither, really, does counsel's above-quoted letter. But, in view of its final statement to the effect that counsel does "not believe that it would be necessary for the Court to conduct a new hearing in this matter," the court may now proceed with the matter. See note 3, *infra.*

**3.** In the meantime, counsel for the defendant has moved to withdraw as his counsel. But defendant's personal appearance and express oral consent to the undersigned's disposition of this action is sufficient to permit this court to adjudicate this matter. See section 1654, Title 28, United States Code.

**4.** See notes 1, 2, and 3, *supra.*

**5.** The material facts stipulated may be summarized as follows: that the parties were divorced in the Superior Court of Franklin County, Washington, by means of a decree of dissolution filed on December 17, 1976; that "under the terms of said Decree, custody of the minor children was awarded to Plaintiff herein"; that, thereafter, on May 13, 1977, the Washington dissolution court "modified its prior Decree by allowing Bankrupt herein to remove said children from the State of Washington for purposes of visitation, but the Court did not modify the right of Plaintiff herein to custody of said children"; that, after the visitation thus permitted, "Bankrupt did not return said children to Washington, but instead on August 24, 1978, filed his Petition for Determination of Custody with the Circuit Court of Jackson County, Missouri"; that the Missouri court heard the motion on December 21, 1977, and issued its order on December 22, 1977, restoring custody to the plaintiff herein and awarding her attorney's fees in the sum of $2,500.00; that the bankrupt subsequently appealed from that order but then withdrew his appeal; and that the bankrupt now seeks to have the obligation for attorney's fees discharged in bankruptcy.

would, of course, apply to any action which is incident to the original divorce."

The *Hargrove* case, *supra,* however, was decided on the basis of a divorce decree rendered prior to the effective date of the Dissolution of Marriage Act, sections 452.-300–452.415 RSMo, January 1, 1974. In the action at bar, however, the awards *sub judice* were made in connection with Missouri proceedings for modification of a decree under Section 452.410 RSMo as it pertained to the custody of a child.[6] Under the new Dissolution of Marriage Act, it has been determined by the governing state court decisions that awards of attorney's fees cannot, as a matter of definition, be regarded as a form of maintenance and support. In *Dyche v. Dyche,* 570 S.W.2d 293, 295–6 (Mo. en banc 1978), the Supreme Court of Missouri, sitting en banc, stated the reasoning behind that holding as follows:

> "Prior to the enactment of the Dissolution of Marriage Act there was no express statutory authorization for the award of attorney fees in a divorce proceeding or in proceedings incidental thereto. However, the authority to make such an award was found as the result of judicial interpretation that the allowance of attorney fees was a form of and was included within the term 'alimony' which was authorized by what was then section 452.070. See *Rutlader v. Rutlader,* 411 S.W.2d 826 (Mo.App.1967), and the cases there cited. Regardless of the judicially determined basis for making the award, it was only indirectly an award for the support of the wife. It was an award of an amount to be paid to the wife which in turn was to be paid by her to another person who was not a party to the action. At most it relieved the wife of a financial obligation to a third party, and permitted her to litigate her claims in the divorce proceeding.

> "At the time the order was entered in this case allowing Elizabeth attorney fees the Dissolution of Marriage Act, sections 452.300–452.415 was in effect. Section 452.335 of that act grants authority to the court to award maintenance to either spouse under certain conditions and in such amounts and for such periods of time as it deems just after considering specified relevant factors. Section 452.-340 authorizes the court to order either or both parents owing a duty of support to a child of the marriage to pay a reasonable amount for his support after considering specified relevant factors. In recognition of the need to assure payment, if possible, of these awards the court is authorized by section 452.345 to require that such maintenance or support payments be made to the circuit clerk for remittance to the person entitled to receive them, and by section 452.350 the court is authorized to order the person obligated to pay support or maintenance to make an assignment of a part of his periodic earnings or other income. It is reasonably clear it was the legislative intent that any award for the *support* of a spouse or for the *support* of a child should be made pursuant to these two statutory provisions.

> "In section 452.355 separate provision is made for the court to award a spouse litigation costs and attorney fees 'after considering all relevant factors including the financial resources of both parties,' and the court is authorized to order the attorney fee to be paid directly to the attorney who may enforce the order in his own name. This award is not subject to the provisions of section 452.345 or

---

**6.** Section 452.410 RSMo provides that "[t]he court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." Section 452.355 provides that "[t]he court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name."

section 452.3[3]5. The separate treatment of maintenance and child support, as one type of an award, and litigation costs and attorney fees as another type of an award, demonstrates a legislative intent not to continue the authority to award attorney fees as an incident to alimony or the present substitute for alimony which is designated as maintenance. The authority to award attorney fees is no longer premised on the authority of the court to award alimony, and it is not premised on the authority to award maintenance or child support. For example, attorney fees may be awarded to a party in a dissolution of marriage proceeding when there is no issue pertaining to maintenance or child support, but when the only issue is the proper division of the marital property, or the designation of what is or is not marital property. The authority to award attorney fees now results from an independent and separate statute, and as such is not an 'Order * * for the support of any person.' It is just what the statute says it is; an 'Order * * * to pay a reasonable amount * * * for attorney's fees.'"

The question in the *Dyche* case, *supra,* was one which is slightly different from that in the action at bar. There, the court purported only to make a determination that awards of attorney's fees could not constitute "support" within the meaning of the state provisions for permitting garnishment or sequestration unlimited by the 25% limit imposed by the Federal Consumer Credit Protection Act. In so doing, it expressly declined to determine whether awards of attorney's fees under section 452.355 RSMo could constitute nondischargeable maintenance or support in bankruptcy proceedings. Decisions holding that awards of attorney's fees in divorce proceedings are nondischargeable as maintenance or support are distinguished in *Dyche, supra,* as cases which "pertain to the existence or preservation of a debt; not to the manner or means of collecting it, which is a matter governed by State procedures when those procedures do not purport to provide for less limitation on garnishments than the federal Consumer Credit Protection Act." 570 S.W.2d at 297.

Subsequently, in *Hallums v. Hallums,* 585 S.W.2d 226 (Mo.App.1979), the St. Louis Court of Appeals, following *Dyche v. Dyche, supra,* squarely held that an award of attorney's fees on a motion to modify a child custody order "is distinct from a child support award, and the authority of a court to award attorney's fees is not an incident of a child support award." 585 S.W.2d at 229.

In these decisions, however, the Missouri courts were primarily concerned with whether an award of attorney's fees was so directly connected with the maintenance or support function that it could *definitionally* be characterized as "support"[7] and, further, be regarded as so vital to those functions as to justify garnishing and sequestering the spouse's entire income, rather than only 25% of it.[8]

---

7. Thus, in the *Dyche* case, the final concluding summary of the holding was to the effect that "(t)he words 'any order of any court for the support of any person' as contained in § 525.-030–2 are not ambiguous. When given their ordinary meaning they refer to child support or maintenance, as those terms are used in the Dissolution of Marriage Act, or any other order to provide for subsistence or maintenance, but they do not include any order entered pursuant to section 452.355 that one party in a proceeding under the Dissolution of Marriage Act pay to the other party an amount for that party's attorney's fees. Therefore, General Motors correctly withheld only 25% of William's disposable earnings." 570 S.W.2d at 297. But, as is noted in the further text of this memorandum, the bankruptcy court, in determining dis-chargeability, is not bound by the labels, but rather by the intended function of the award.

8. This court would agree that an award of attorney's fees is not such an immediate form of support that it would warrant the garnishment or sequestration of all of one's income, but, although not of immediate necessity, it nevertheless performs a support function by limiting the amount which the party must spend for attorney's fees and thus permitting that party to spend the amount saved for custodial, support and maintenance functions. And when an award of attorney's fees is based upon need, as it must be under the statute, the support function is particularly prominent to allow it nondischargeable status even if it should not be so paramount as to be entitled to overcome

In considering whether a debt is to be preserved as nondischargeable within the meaning of section 17a(7) of the Bankruptcy Act, however, the court of bankruptcy must answer the broader question of whether the award, however indirectly, may have been intended to serve the maintenance or support function. It is quite true, as a fundamental principle, that "[w]hat claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *Vanston Bondholders Protect. Com. v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946). Basically, the same principle applies in respect to the determination of the nature of the liability. "[O]ur question as to whether the obligations are in the nature of alimony or support . . . is determined by state law." *Nitz v. Nitz,* 568 F.2d 148, 151 (10th Cir. 1977); *In re Waller,* 494 F.2d 447, 448 (6th Cir. 1974). Nevertheless, because the federal court is obligated to determine the intended function of the award, the characterization of the award by the state court is not conclusive. "That the award . . . did not purport to grant 'alimony,' in the general sense, . . . is not dispositive, for it is the basis for creation of the obligation which determines whether it was intended . . . as support and maintenance." *Matter of Woods,* 561 F.2d 27, 29 (7th Cir. 1977). "Federal bankruptcy law is not the source of these obligations; it takes them as it finds them and, when necessary, characterizes the legal relations existing between the parties for its own purposes." *Matter of Albin,* 591 F.2d 94, 97 (9th Cir. 1979). This is a principle which is particularly applicable in view of the state court's specifically and expressly declining in *Dyche v. Dyche, supra,* to determine the dischargeability issue, or even to state that its pronouncements were binding on that issue.[9]

Nevertheless, in order that the fundamental purpose of confiding the law of domestic relations to the states not be frustrated, the bankruptcy court's determination of the actual legal relations between the parties and the intended function of the award must be based upon the relationship which state law has actually created between the parties. See *Matter of Woods, supra,* at 29–30. Thus, while the bankruptcy court need not accept the nomenclature applied by the state court (which, as was noted in *Dyche v. Dyche, supra,* may produce a result at variance with that intended by the framers of the Bankruptcy Act), it must accept state law's characterization of the relations and functions created, then determine whether that relation and function amounts to "support" within the meaning of section 17a(7). Under the Missouri cases, it has traditionally been held that "where the agreement (or decree) is *substantially* for alimony, maintenance or support, . . . the obligation thereunder is not dischargeable in bankruptcy." *Henson v. Henson,* 366 S.W.2d 1, 4 (Mo.App.1963) (Emphasis added.). The essential issue is whether the award is for the purpose relating to "the obligation to maintain and support a family." *Poolman v. Poolman,* 289

---

the 25% exemption to garnishment or sequestration.

9. This court has on prior occasion ruled that, when the state court refrains from ruling directly on the question of dischargeability *vel non,* its characterization of an award as support or non-support was not binding on this court. Thus, in *Edmondson v. Edmondson,* 242 S.W.2d 730, 733 (Mo.App.1951), the Missouri Court of Appeals held that, when the parties in a divorce proceeding had agreed that payments for support and maintenance should be characterized as a property settlement and not as alimony, the divorce court was without power to characterize it as alimony. In a similar case brought in the bankruptcy court, however, this court noted that the *Edmondson* court (as did the *Dyche* court) explicitly refrained from determining whether the award (which had, as its purpose, the support and maintenance of the spouse) would be dischargeable in bankruptcy. In determining the intended function, rather than the nomenclature, in the similar case, this court held the award to be nondischargeable in bankruptcy. *In re Parsons,* Civil Action In Bankruptcy No. 78-00528-B-W-1 (W.D.Mo. May 15, 1979).

F.2d 332, 335 (8th Cir. 1961) (applying Missouri law).

In considering the facts which have been stipulated in the action at bar, it appears distinctly that the award must have been, under the governing state law, intended to serve the function of support and maintenance of the plaintiff and the minor child of whom she had custody. It is to be noted that, traditionally, under the law of Missouri, an award of attorney's fees in proceedings to modify a custody order is to be made on the basis of the need of the party to the proceeding. "[B]efore any award of suit money and attorney's fees in the prosecution of a motion to modify is allowed, there must be evidence establishing the need of the wife to have expenses borne by the husband." *Stanfill v. Stanfill*, 505 S.W.2d 438, 439 (Mo.App.1974). There is no indication that this principle has been changed by the enactment of the Dissolution Act, including the specific attorney's fees statute, section 452.355. That section, in providing for awards of attorney's fees (including, *inter alia,* in actions for modification of custody decrees pursuant to section 452.410), authorizes the award to be made "after considering all relevant factors including the financial resources of both parties . . ." If the award were to be based on factors other than those of need and ability to pay, the comparative financial resources could not be the one expressly-mentioned consideration, and the sole consideration which is required as the *sine qua non* of the award. Thus, in the absence of evidence to the contrary (and there is none in the action at bar), it must be presumed by the court of bankruptcy that the state court followed the governing state law and considered the financial resources of the parties.[10] This would necessarily mean that, at least in material part, the award of attorney's fees was based upon the need of the plaintiff and the ability to pay of the defendant and consequently that

it was related to the support function. There is no evidence that it was based on any other factor, and therefore the court is warranted in inferring and concluding that financial need constituted the sole basis for the award and that, therefore, it must have been intended to supply a support function.[11]

Therefore, for the foregoing reasons, the court of bankruptcy is constrained, under the governing legal principles, to hold that the award of attorney's fees is sufficiently related to support to require its being regarded as nondischargeable in bankruptcy, even though it may not, under the state court decisions, constitute "support" within the meaning of section 525.030–2 RSMo so directly and essentially that it can result in garnishment or sequestration of more than 25% of the defendant's wages.

It is therefore, accordingly,

ORDERED, ADJUDGED, AND DECREED that the defendant's indebtedness to plaintiff in the sum of $2500 be, and it is hereby, declared to be nondischargeable in bankruptcy under the provisions of section 17a(7) of the Bankruptcy Act. It is further, pursuant to the provisions of section 17c(3) of the Bankruptcy Act,

ADJUDGED that the plaintiff have and recover the sum of $2500 from the defendant.

---

10. See note 6, *supra,* setting out the provisions of section 452.410.

11. The statute, see note 6, *supra,* would permit an award based on financial resources alone, if

that were the only relevant factor. Since there is no evidence that any other factor was considered, the court of bankruptcy is warranted in concluding that it was the sole factor.