In re George Leander **LINEBERRY** and Jeanne Glenda Lineberry, Debtors.

Carolyn S. **LINEBERRY**, Plaintiff,

v.

George Leander **LINEBERRY**, Defendant.

Bankruptcy No. 80–01393–C. Adv. No. 80–0300–C.

United States Bankruptcy Court, W. D. Missouri, C. D.

Feb. 25, 1981.

Thomas H. Reppell, Grandview, Mo., for debtors and defendant.

R. L. Veit, Jefferson City, Mo., for plaintiff.

## MEMORANDUM OPINION AND ORDER

FRANK P. BARKER, Jr., Bankruptcy Judge.

This is a complaint filed by Carolyn S. Lineberry, the former spouse of debtor, George Leander Lineberry, seeking to have declared non-dischargeable via § 523(a)(5) of the Bankruptcy Code, certain debts agreed to by the parties in a Separation Agreement which was later incorporated into their Decree of Dissolution of Marriage. Trial was held before this Court September 11, 1980, all parties being represented by counsel. Both parties subsequent to trial have filed suggestions.

## FINDINGS OF FACT/CONCLUSIONS OF LAW

The marriage of nearly 17 years between Carolyn and George Lineberry was dissolved on March 14, 1978, pursuant to the provisions of the Missouri Dissolution of Marriage Act, Ch. 452, R.S.Mo.1978. On February 10, 1978 the parties had entered into a separation agreement (entitled "Agreement") which was incorporated into the parties Decree of Dissolution.

At the time the separation agreement was executed the couple had two children, Glen Marvin Lineberry, age 16 and David Carl Lineberry, age 11. Carolyn Lineberry testified that at the time of the "Agreement's" execution she worked at the Missouri House of Representatives (as she had for the previous 7 years) at a salary of $680–$690 per month. She has not remarried and currently works for the Missouri Secretary of State at a salary of $850 per month.

George Lineberry in his Voluntary Petition in Bankruptcy, filed May 5, 1980, lists his occupation as Planner III, Division of Budget and Planning, Missouri State Office of Administration. He indicates he has been employed there 11 years, at a salary of $18,894 ($1,575 per month) in 1978 and $20,088 ($1,674 per month) in 1979. At the time of both the separation agreement and dissolution the parties were represented by the same attorney.

The "Agreement" entered into provided the wife with the custody of the children. The property division gave the wife:

(1) the home of the parties subject to any encumbrances including taxes and special assessments for 1978, and all the household contents;

(2) a 1977 Ford Stationwagon subject to loan or mortgage existing on such;

(3) all personal clothing, jewelry and effects;

(4) $300.00 cash paid by the husband prior to signing the agreement;

(5) all monies held in a checking or savings account in her name; and

(6) all the clothing and personal items of the children.

The property division gave the husband:

(1) all personal clothing and effects;

(2) all monies held in a checking or savings account in his name; and

(3) some itemized personal effects in the home of the parties.

The "Agreement" further stated:

6. Husband agrees that he will pay Wife as maintenance the sum of $100.00 per month commencing on the first day of March, 1978, and continuing on the first of each month thereafter following so long as the Wife remains married to him, or if in the event their marriage is dissolved, until such time as she becomes remarried.

7. Husband will pay to Wife as support for said children born of the marriage, to-wit: Glen Marvin Lineberry and David Carl Lineberry, the sum of $200.00 per month for each child commencing on the first day of March, 1978, and continuing on the first of each and every month thereafter following until such child reaches the age of 21, obtains his bachelors degree from college or enters full employment, whichever event first happens.

(8) Husband further agrees that at such time as he is no longer obligated under Paragraph 7 above to pay child support to Wife for one of the children to automatically pay to Wife as increased or additional maintenance the additional sum of $50.00 per month. No additional, automatic increase in maintenance payable to Wife shall be owing upon the sessation of Husband's obligation to pay child support for the last child receiving the same.

The plaintiff contends that Paragraphs 9 through 14 [1] of the "Agreement" are in the nature of alimony, maintenance or support under § 523(a)(5) and thus non-dischargeable. Defendant contends that the parties in Paragraphs 6 through 8 disposed of all their support and maintenance obligations and that these three paragraphs (paragraphs 6–8) are not listed in the bankruptcy schedules as dischargeable debts. Thus, the defendant contends that Paragraphs 9 through 14 are in the nature of a property settlement and thus dischargeable.

§ 523(a)(5) of the Bankruptcy Code provides:

"A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

1. 9. Husband agrees to pay and be liable for expenses for care of the minor children by an orthodontist of an estimated total expenditure of $1,200.00 and to pay the same to said orthodontist at the rate of $50.00 per month or to reimburse Wife in a like manner if she pays the billing of the orthodontist.

10. Husband further agrees to pay Wife in addition to all sums abovementioned the sum of $150.00 per month commencing on the first day of March, 1980. Said sum to be held by Wife and used for the college education of the children born of the marriage. Said sum shall be used for tuition, fees, books, lodging, and reasonable transportation. The Husband shall pay such sum to Wife until both of said children have either reached the age of 21 years, obtained his bachelors degree from college, or entered full employment, whichever event first happens. If in the event there is money so paid to Wife remaining or not expended for the abovementioned purposes at the time that the last of said children of the marriage reaches the age of 21, obtains his bachelors degree from college, or enters full employment, then in such event, Wife shall equally divide between the children born of the marriage any money so remaining and pay the same over to them. Wife shall semiannually on the first day of January and the first day of July of each year when said sums are so paid to Wife render to Husband an accounting of such funds.

11. Husband further agrees to assume and pay all indebtedness incurred by the reason of the marriage up to and including February 15, 1978. All debts incurred by Husband and Wife after that date shall be the sole responsibility of the party which incurred such debt.

12. Husband currently has life insurance policies issued covering his life. The same being policy # 1427491 issued by Provident Mutual Life Insurance Company in the amount of $15,000.00, policy # 726934158A issued by Metropolitan Life in the amount of $10,000.00, and policy # 720900886AB issued by Metropolitan Life in the amount of $65 monthly annuity. It is understood that the sum of approximately $2,000.00 has been borrowed against the policy with Provident Mutual Life Insurance Company and Husband agrees that he will pay the premiums on and maintain said policies of insurance through the year 1988 and that until such time he will cause Wife to be beneficiary of said policies and will not further borrow on said policies.

13. Husband further agrees to maintain health insurance coverage on the children born of the marriage under his current insurance coverage through his employer and in the event should said Husband's present coverage cease by reason of his leaving his present employer or otherwise, then Husband shall cause said children to be covered by similar insurance without lapse either through his new employer or by coverage independently purchased by Husband. Said coverage shall be maintained on each of said children until said child completes his formal education or is fully employed. In the event Husband changes insurance coverage or insurer providing health insurance on said children, he will without delay notify Wife of the name of the insurer and the coverage provided.

14. Husband further agrees that if in the event either party shall at some future date determine to take legal action to dissolve the marriage of the parties to pay for any legal services incurred by Wife to the maximum amount of $500 together with any court costs she might incur.

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) such debt includes a liability designed as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;"

Thus, even though a debt is designated as one for alimony, maintenance or support, this exception to discharge will not operate unless the liability is actually in the nature of alimony, maintenance or support. § 523(a)(5)(B) H.R.Rep.No.95–595, 95th Cong., 1st Sess. 364, U.S.Code Cong. & Admin.News 1978, 5963 (1977) S.Rep.No.95–989, 95th Cong., 2nd Sess. 77–79, U.S.Code Cong. & Admin.News 1978, 5787 (1978).

■ The legislative history makes it clear that what constitutes alimony, maintenance or support is to be determined under bankruptcy laws, not State Law. H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 363 (1977); S.Rep.No.95–989, 95th Cong., 2nd Sess. 77–79 (1978). See also Collier on Bankruptcy, ¶ 523.15, p. 523–109 (15th Ed. 1980).

The statement that federal law controls what constitutes, alimony, maintenance or support actually begs the question, since the area of domestic relations is one quintessentially reserved to the control and regulation of the states. There is no federal common law of domestic relations. The point is that bankruptcy courts are not bound by state law where it defines an item as alimony, maintenance or support, as they are not bound to accept the characterization of an award as support or maintenance, which is contained in the decree itself. However, recourse must be had to state law for principal criteria by which to determine whether the obligations imposed by the decree are one or the other.

"While the legislative history indicates that the determination whether an award constitutes alimony shall be made with reference to a federal standard, nothing in the legislative history suggests that state law shall play no part in making that determination." *In re Pelikant*, 5 B.R. 404, 406 (N.D.Ill.1980).

■ A judgment of divorce decree incorporating a marital settlement agreement is not res judicata in proceeding to determine dischargeability of spousal support; the doctrine of collateral estoppel does not shield inquiry into marital dissolution judgment and marital settlement agreement incorporated therein as to character of spousal support provided in agreement. *Re Chin*, 4 B.C.D. 924, 17 C.B.C. 790 (D.C.Cal.1978).

Since the nature of the claim underlying the debt determines the extent of the dischargeability, it is necessary to examine the agreement and all the circumstances surrounding the creation of the liability to determine if the debt is in nature of alimony, maintenance or support. It has long been settled that in determining this the Court may look behind the recitations of the divorce decree to the substance of the situation. *Warner v. Warner*, 5 B.R. 434, 439–440 (Utah 1980) stated:

"The nature of the debt whether it was imposed to discharge the obligation of support, cannot be determined from the "four corners" of the divorce decree and attendant settlement stipulations without impairing the federal character of the nondischargeability provisions and their underlying policies..." *Warner, supra*, at 440.

"Furthermore, it cannot routinely be argued that the divorce decree, like a contract, evidences the intent of the parties in discharging support, for often the effect of the filing of bankruptcy is not in contemplation when the decree is drafted... Therefore, it cannot be said from that recitation that the intent of the parties was or was not to provide support... To hold the parties to the terms of a decree as one would to the terms of a contract might often ignore the true nature of the debt... *Warner, supra* at 441.

In the case at bar the state court's findings of fact, if any, has not been made a part of this Court's record. The only evidence before the Court from the proceedings below is the Judgment Entry and "Agreement" incorporated therein.

■ Although beyond the language itself, some inference might be drawn from the placement of specific provisions within the document (i. e. since the specific division of property provisions appear in paragraphs 3 through 5, and paragraphs 6 through 8 provide for specific payments of support and maintenance, the fact that the paragraphs disputed are 9 through 14 could lead one to argue that they were intended as a continuation of the support and maintenance provisions), an examination of the documents alone does not produce an unambiguous or clear view. As such the parties ought to be able to produce extrinsic evidence to prove the underlying nature of the debts in question. *Melichar v. Ost*, 445 F.Supp. 1162 (D.C.Md.1977).

In addition to the parties testimony as to their intent, this Court must consider the criteria a dissolution court must weigh before it may award maintenance or support.

§ 452.335 R.S.Mo.1978 mandates that in order to grant maintenance to either spouse it must find that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Once it finds these two elements (which it must have since it granted maintenance of $100.00 per month) it awards the amount of maintenance based on the following relevant factors:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The standard of living established during the marriage;

(4) The duration of the marriage;

(5) The age, and the physical and emotional condition of the spouse seeking maintenance;

(6) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(7) The conduct of a party seeking maintenance during the marriage.

§ 452.340 R.S.Mo.1978 contains the relevant factors the court below considered in awarding support:

(1) The father's primary responsibility for support of his child;

(2) The financial resources of the child;

(3) The financial resources of the custodial parent;

(4) The standard of living the child would have enjoyed had the marriage not been dissolved;

(5) The physical and emotional condition of the child, and his educational needs; and

(6) The financial resources and needs of the noncustodial parent.

It should also be noted that the presence of one or more of these factors does not necessarily mean that the obligation is one of support nor does the absence of one or more indicate the award is a property settlement. The determination must be made on a case to case basis.

Before this Court specifically addresses the debts in dispute it should be noted that courts in these cases are confronted with two conflicting policy considerations, (1) that of requiring the debtor to fulfill obligations to his ex-wife arising out of the broken marriage contract, and (2) that of giving the debtor a fresh start unencumbered by the burdens of pre-existing debts arising from other contracts.

Further, it should be made clear that the burden of proof is on the party asserting that the debt is nondischargeable. Bankruptcy Rule 407; *In re James Riley Fox*, 6 B.C.D. 709 (N.D.Tex.1980); *Davis v. Davis*, 593 P.2d 88 (Okla.1979); *Re Harris*, 458 F.Supp. 238 (D.C.Or.1976), aff'd 587 F.2d 451 (C.A.9th 1978).

At trial, Carolyn Lineberry testified as to the intent of the parties in setting the "Agreement's" terms. Defendant declined to testify at trial yet "... respectfully suggests the Court should take into consideration the self-serving nature of said statements (by the plaintiff) in weighing their veracity." (Supplemental Memorandum of Authority in Opposition of Complaint, p. 1). If the defendant felt the creditor had not carried her burden of proof, he nevertheless failed to move for a directed verdict at the close of the plaintiff's evidence.

Paragraph 9 of the "Agreement" states:

"Husband agrees to pay and be liable for expenses for care of the minor children by an orthodontist of an estimated total expenditure of $1,200.00 and to pay the same to said orthodontist at the rate of $50.00 per month or to reimburse wife in a like manner if she pays the billing of the orthodontist."

Plaintiff argues that this is clearly in the nature of child support, testifying that this debt was contracted for and the work in progress before the dissolution was entered into. Defendant contends that this is not support but more in the nature of a gift of a luxury item.

■ Based on the relevant support factors of § 452.340 R.S.Mo.1978, especially the salary disparity of the parties and the physical and emotional needs of the child; the "Agreement's" language, including "... or to reimburse Wife in like manner...," thus not indicating a certain payment to a third party; and the testimony that the orthodontic care had already begun—I find this debt in the nature of support and non-dischargeable.

Paragraph 10 states:

"Husband further agrees to pay Wife in addition to all sums above mentioned the sum of $150.00 per month commencing on the first day of March, 1980. Said sum to be held by Wife and used for the college education of the children born of the marriage. Said sum shall be used for tuition, fees, books, lodging, and reasonable transportation. The Husband shall pay such sum to Wife until both of said children have either reached the age of 21 years, obtained his bachelors degree from college, or entered full employment, whichever event first happens. If in the event there is money so paid to Wife remaining or not expended for the above mentioned purposes at the time that the last of said children of the marriage reaches the age of 21, obtains his bachelors degree from college, or enters full employment, then in such event, Wife shall equally divide between the children born of the marriage any money so remaining and pay the same over to them. Wife shall semiannually on the first day of January and the first day of July of each year when said sums are so paid to Wife render to Husband an accounting of such funds."

The undisputed testimony of Carolyn Lineberry at trial was that both parties had assumed the children would go to college. She further indicated that this was a factor in determining what was a reasonable amount of child support and maintenance to be paid her.

Debtor contends that Paragraph 10 is not in the form of child support because a husband can't be automatically obligated to pay for his children's college education. He cites *Sunderwirth v. Williams*, 553 S.W.2d 889 (Mo.App.1977) for the proposition that an evidentiary foundation must be laid to determine that such obligation exists. He argues that this was not sufficiently laid at the dissolution hearing, and the children were too young at the time to make such a determination.

*Sunderwirth, supra* by no means stands for the proposition that a non-custodial parent cannot be required to pay for his or her

child's college education. In *Roberts v. Roberts*, 592 S.W.2d 860, 862 (Mo.App.1979) the court stated:

"College expenses were properly considered in this case as bearing on the amount of child support. The evidence warranted the award of child support based on son's need, including his college expenses. The shortcomings of *Sunderwirth v. Williams*, 553 S.W.2d 889, 893–94 (Mo.App.1977), do not occur here."

See also *Anderson v. Anderson*, 437 S.W.2d 704 (Mo.App.1969): *Sportsman v. Sportsman*, 409 S.W.2d 787 (Mo.App.1966); *Bagley v. Bagley*, 460 S.W.2d 736 (Mo.App. 1966); *Allison v. Allison*, 540 S.W.2d 635 (Mo.App.1976)—considering the academic ability of the child and the financial ability of the parent to pay or contribute to the costs of the child's college education; and *Clouse v. Clouse*, 545 S.W.2d 402 (Mo.App. 1976).

His remedy if the debtor feels an evidentiary foundation was insufficiently laid was to have appealed the Judgment Entry, or to have proceeded back to the trial court to obtain a modification of the support agreement. Without the record before us, this Court can only assume that the trial court considered the evidence sufficiently laid.

The debtor more forcefully argues that the wording of the obligation to pay college expenses indicates it is not a support obligation. While this Court does find the wording to be rather loose (i. e. it is conceivable that neither child would attend college and that the youngest child would not enter full employment until he was 21 in approximately 1988 at which time the eldest son would be 26 and the fund would then be equally divided between the children for whatever purpose), it does not mean the children will not attend college. Again, if the debtor is unsettled by this prospect his remedy is in the trial court. This Court need only ascertain whether or not this paragraph was intended as support or a property settlement.

Debtor argues that because the monies could easily be payable after the emancipation of one or both children, it could not be

in the nature of support, as emancipation of a minor clearly terminates the parents duty of support. Citing, *Block v. Lieberman*, 506 S.W.2d 485, 486–487 (Mo.App.1974); *Meyer v. Meyer*, 493 S.W.2d 42, 46 (Mo.App.1973); and *Sunderwirth, supra.*

In *Block, supra*, the court held the wife had no standing to seek support money to pay for her adult child's (i. e. 21 years of age) college education, as an award of child support while made to the parent, is for the benefit of the child since they lack legal status to bring the suit themselves.

"When the child reaches twenty-one however, this disability is removed and if an obligation to provide support exists, the child may proceed in his own right to establish such obligation." at 486

The son then brought suit in his own name in *Lieberman v. Lieberman*, 517 S.W.2d 478 (Mo.App.1974) where the granting of defendant's motion to dismiss for failure to state a claim was affirmed, as the petition did not allege facts giving rise to a duty for post-majority parental support. That Court stated however:

"Absent special circumstances, a parent is under no duty to support an adult child. 67 C.J.S. Parent and Child § 17, p. 704. This general rule found application in *State ex rel. Kramer v. Carroll, supra*, at 659[9], as follows:

"Ordinarily, however, in the absence of constitutional or statutory provisions or contractual relations to the contrary, the obligation of the parent to support a child ceases when the child reaches his majority . . . The law regards the normal child as capable of supporting himself at the age of twenty-one years."

A recognized exception occurs where the adult child is unmarried, unemancipated and insolvent and physically or mentally incapacitated from supporting himself. *Fower v. Fower Estate*, 448 S.W.2d 585 (Mo.1970). The parental duty of support in such cases may continue past chronological majority when, because of physical or mental infirmity, the child is unable to provide for his support and under-

take the responsibilities normally associated with his age. The duty on the parent to provide post-majority support arises not from the nature of the support or benefits sought, but from the condition of the child seeking the benefit." at 480

Again, if the debtor felt this provision is void or voidable he could have appealed the Judgment Entry or can request modification of the agreement when an exception to support (i. e. emancipation) occurs.

This Court's only concern is whether this paragraph constitutes support or a property settlement. Based on the testimony at trial and relevant support factors of § 452.340 R.S.Mo.1978 considered by the trial court, I find this debt in the nature of support and thus non-dischargeable.

Paragraph 11 states:
"Husband further agrees to assume and pay all indebtedness incurred by the reason of the marriage up to and including February 15, 1978. All debts incurred by Husband and Wife after that date shall be the sole responsibility of the party which incurred such debt."

Carolyn Lineberry's testimony was that she considered her husband paying the debts of the marriage as a factor in what was a reasonable amount of monthly maintenance payable to her. She also stated that apparently the bills incurred in the marriage had been paid.

The debtor argues that the monthly cash maintenance payments of $100.00 provide adequately for his wife's needs.

Many cases that have found agreements to pay the debts of the marriage dischargeable based the decision on the parties not having an agreement as to monthly support and/or maintenance payments; and lack of income disparity between the parties. See In re Woods, C.C.H. ¶ 66,499 (C.A.7th 1977); In re Williams, 3 B.R. 401 (N.D.Ga.1980).

In the case at bar there is a provision to support the wife via maintenance payments. As she was awarded maintenance, even though she received the disproportionate share of the marital property, the trial court must have found that she lacked sufficient property, including marital property, to provide for her reasonable needs. Further, there was a substantial income disparity between the parties, $885.00 a month, at the time of the agreement and subsequent dissolution.

However, the language is not truly in the nature of a "hold harmless (and indemnify) agreement", and it also appears that such payments are not made payable to the plaintiff but to third parties. As such, this is not a payment to a spouse or child, and thus, I hold the debt to be in the nature of a property settlement and thus dischargeable.

Paragraph 12 states:
"Husband currently has life insurance policies issued covering his life. The same being policy # 1427491 issued by Provident Mutual Life Insurance Company in the amount of $15,000.00, policy # 726934158A issued by Metropolitan Life in the amount of $10,000.00, and policy # 720900886AB issued by Metropolitan Life in the amount of $65 monthly annuity. It is understood that the sum of approximately $2,000 has been borrowed against the policy with Provident Mutual Life Insurance Company and Husband agrees that he will pay the premiums on and maintain said policies of insurance through the year 1988 and that until such time he will cause wife to be beneficiary of said policies and will not further borrow on said policies."

Plaintiff contends this provision could only have been intended as support and maintenance in the event of her husband's death.

While the validity of such agreement and judgment has not gone unquestioned, a court has the power to incorporate in its divorce decree such provisions, even if itself might lack the inherent power to make such an order. Bishop v. Bishop, 151 S.W.2d 553 (Mo.App.1941).

Debtor again argues that this has to be in the nature of a property settlement since the obligation of support terminates with the death of a parent.

 It appears to this Court that this insurance is obviously in the nature of security for payment of support and maintenance. Insurance provides a relatively painless manner of achieving this objective and providing for the children's future.

This Court rejects the argument that because the period of insurance, designed to run until the youngest child reached majority, could include a period when elder children come of age and are no longer entitled to support—it cannot be a support provision and is thus dischargeable.

Again, the defendant did not object at the trial level on this ground. If it felt the decree was too broad, the remedy for its invalidity lay in an appeal from the decree. It appears to this Court that this provision incorporated in the decree of dissolution was an appropriate exercise of the court's power to provide security for the children's support and maintenance.

While under common law liability for support may have terminated at death, the question here is controlled by the terms of a statute which defines the power of the court to provide support. To accomplish the primary concern (i. e. the welfare of the child) the grant of power given by the legislature is broad and comprehensive.

Based on the relevant support factors of § 452.340 and maintenance factors of § 452.335, considered by the trial court, and the testimony at trial, this Court finds this debt in the nature of support and/or maintenance and thus nondischargeable.

Paragraph 13 states:

"Husband further agrees to maintain health insurance coverage on the children born of the marriage under his current insurance coverage through his employer and in the event should said Husband's present coverage cease by reason of his leaving his present employer or otherwise, then Husband shall cause said children to be covered by similar insurance without lapse either through this new employer or by coverage independently purchased by Husband. Said coverage shall be maintained on each of said children until said child completes his formal education or is fully employed. In the event Husband changes insurance coverage or insurer providing health insurance on said children, he will without delay notify Wife of the same of the insurer and the coverage provided."

 Based on the same reasons espoused in the discussion of paragraph 12, this Court holds that paragraph 13 is in the nature of support and thus non-dischargeable.

Paragraph 14 states:

"Husband further agrees that if in the event either party shall at some future date determine to take legal action to dissolve the marriage of the parties to pay for any legal services incurred by Wife to the maximum amount of $500 together with any court costs she might incur."

 If the payout is made directly to an attorney, it is clearly a debt assigned to another entity and thus dischargeable. *In re Allen*, 4 B.R. 617, (E.D.Tenn.1980); *Matter of Spong*, 3 B.R. 619 (W.D.N.Y.1980).

At one time attorney's fees were generally regarded as alimony. *In re Hargrove*, 361 F.Supp. 851 (W.D.Mo.1973) *Hargrove* and cases like it were decided prior to the effective date of the Dissolution of Marriage Act, *supra*, under which it is no longer the case that Missouri law construes attorney's fees by definition as maintenance, support or alimony. *Dyche v. Dyche*, 570 S.W.2d 293, 296 (Mo.banc.1978). *Dyche* however did not deal with the issue of dischargeability. *Matter of Evans*, 2 B.R. 85, 90 (W.D.Mo.1979).

This Court must decide whether this paragraph, however indirectly, may have been intended to serve the maintenance or support function. *Matter of Evans, supra.*

The essential issue is whether the award is for the purpose relating to "the obligation to maintain and support a family". *Poolman v. Poolman*, 289 F.2d 332, 335 (8th Cir. 1961).

Here support and maintenance payments were made to the wife and children. This Court considers an award of attorney's fees

the same as an allowance to provide food, shelter and clothing—necessary if the wife is to prosecute or defend a divorce action.

 Based on the testimony at trial and the relevant support and maintenance factors of § 452.340 and § 452.335, I find this debt in the nature of support and maintenance and thus non-dischargeability. It is

ORDERED that the debts listed in paragraphs 9, 10, 12, 13, 14 of the "Agreement" are non-dischargeable and the debt listed in paragraph 11 of the "Agreement" be discharged.