**In re Montgomery Hulon HARRELL, Debtor.**

**Montgomery Hulon HARRELL, Plaintiff,**

**v.**

**Caryl Ann (Kaldenberg) Harrell SHARP, Defendant.**

**Bankruptcy No. 80–03730A.
Adv. No. 80–1388A.**

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Sept. 30, 1982.

Paul W. Bonapfel, Cotton, White & Palmer, Atlanta, Ga., for plaintiff.

Timothy Sweeney, Perry Phillips, Atlanta, Ga., for defendant.

### ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on the plaintiff's Complaint to Determine Dischargeability of Debt. On December 19, 1980, Montgomery Hulon Harrell filed a Complaint to Determine Dischargeability of Debt concerning certain alimony and child support arising out of the plaintiff's separa-

tion and subsequent divorce from the defendant, Caryl Ann Sharp. On August 18, 1981, this Court entered an Order on the defendant's Motion for Judgment on the Pleadings which this Court treated as a Motion for Summary Judgment. In the August 18, 1981 Order, this Court held that the question of dischargeability of arrearage in alimony and child support was not appropriate for the grant of summary judgment; that the debtor's obligation to pay for his son's support and education was not dischargeable; and that the Court would reserve the question of modification of the separation agreement.

On September 9, 1982, a trial was held on Mr. Harrell's Complaint to Determine Dischargeability of Debt in accordance with the statement of law set forth in the August 18, 1981 Order. The issues before the Court were: (1) whether at the time Mr. Harrell and Mrs. Sharp entered into the September 10, 1971 separation agreement, as amended June 4, 1974, there was a present need that alimony and child support be paid and whether this need was in effect at the time of the filing of the debtor's Chapter 7 petition on October 17, 1980; (2) what amount of money was the debtor obligated to give his son for his support and education; and (3) whether this Court could and to what extent it should modify the parties' separation agreement.

The Court has jurisdiction over this case concerning all of the above issues. This Court clearly has jurisdiction over the question of the dischargeability of Mr. Harrell's obligation to Mrs. Sharp and to Scott Harrell for alimony and support, respectively. This Court has jurisdiction over the question of the modification of the September 11, 1971 separation agreement pursuant to 28 U.S.C. § 1471(b) and (c). This jurisdiction may change on October 4, 1982 in accordance with the recent decision of *Northern Pipeline Construction Company v. Marathon Pipe Line Company*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598; 9 BCD 67 (1982).

## DISCHARGEABILITY OF ALIMONY

The September 11, 1971 separation agreement between Mr. Harrell and Mrs. Sharp provided that Mr. Harrell was to pay to Mrs. Sharp $100.00 per month for her support and maintenance so long as she shall live or until she shall remarry. The June 4, 1974 amendment to the separation agreement provided that Mrs. Harrell was to receive $200.00 per month as alimony. In June of 1975, Mrs. Sharp remarried, thus terminating Mr. Harrell's obligation to provide her with alimony. Accordingly, all alimony arrearages arose prior to 1975. At the time of Mr. Harrell's and Mrs. Sharp's separation and subsequent divorce, Mrs. Harrell had completed one year of college education and was unemployed. Furthermore, Mrs. Sharp was obligated to make a $250.00 per month mortgage payment and to maintain a household out of the alimony she received and her $550.00 a month gross salary. There is no question but that at the inception of the debtor's obligation to pay alimony to Mrs. Sharp, there was a present need for Mrs. Sharp to receive said alimony payments.

Mrs. Sharp's current financial situation is as follows: Mrs. Sharp is a certified public accountant who has recently begun a solo practice. Her expected income for 1982 is approximately $30,000.00. She is married and is the co-owner of a home with her husband, the home having a mortgage of $52,000.00. The joint net worth of Mrs. Sharp and her husband is approximately $42,000.00. Mrs. Sharp is still paying on loans she received to enable her to attend college, and the Court notes that Mrs. Sharp depleted her savings in order to attend college. (See July 16, 1982 deposition of Caryl Ann Sharp at pp. 36 and 37.) This Court finds that Mrs. Sharp also contributes substantial sums for the support and education of her son, Scott Harrell.

The Court is presented with an interesting dilemma. It is difficult to conclude that in a situation in which a party has remarried a present need for alimony exists. In fact, it is arguable that what once was alimony has lost its character as alimo-

ny due to change of circumstances, indicating support is no longer needed. This Court does not wish to create a precedent whereby debtors need only wait for their spouses to remarry to be relieved of any obligation they have to fund arrearages in alimony, as such a holding would militate against the clear Congressional policy of not allowing the discharge of alimony as evidenced by 11 U.S.C. §§ 523(a)(5) and 1328(a)(2). However, this policy must be balanced against the overriding Congressional policy contained in the Bankruptcy Code of providing a debtor with a "fresh start." In the instant case, Mrs. Sharp's de minimis present need for alimony, when balanced against the Congressional policy providing a debtor a "fresh start," results in the conclusion that the alimony arrearages that Mr. Harrell owes to Mrs. Sharp are dischargeable under the peculiar facts and circumstances of the instant case.

## CHILD SUPPORT AND EDUCATIONAL EXPENSES

This Court found in its August 18, 1981 Order that the debtor's obligation to pay child support and educational expenses of his son until he reached the age of twenty-one (21), or as otherwise stipulated, is nondischargeable. This obligation was limited by the following clause contained in paragraph 3(c) of the original separation agreement:

> "It is the desire of the parties to provide the most excellent and suitable education within the husband's means."

In accordance with this clause, the question before the Court is the interpretation of this phrase and its translation into a dollar amount.

■ Parties to contracts do not include clauses that have no meaning. In the instant case, the inclusion of the clause that Mr. Harrell's obligation to provide for his son's education is limited to an education that is within Mr. Harrell's means must be read in light of reason and experience. This clause does not mean that were Scott Harrell to attend a school where tuition and expenses exceeded $15,000.00 per year, and

Mr. Harrell's gross income was only $20,-000.00 per year, Mr. Harrell would have to endure financial penury in order to meet his obligation under the separation agreement. In the instant case, Scott Harrell attends Drake University with an annual cost of approximately $9,678.00 for tuition, room and board. (See Scott Harrell's deposition at pp. 45 and 47.) The evidence presented at the September 9, 1982 hearing showed that Mr. Harrell has a net annual income of approximately $24,000.00 per year and has living expenses of approximately $1,300.00 per month. The evidence also showed that Mr. Harrell is subject to certain tax liabilities arising out of a business with which he became associated when he returned to Atlanta in 1978. In addition, evidence was adduced to the effect that the debtor will incur legal expenses concerning this tax obligation, as well as legal expenses arising out of the debtor's bankruptcy proceeding, including this Complaint to Determine Dischargeability of Debt. The debtor's proposal to pay $300.00 per month toward the educational expenses of his son is a reasonable figure and is made in good faith. This figure is approximately 15% of the debtor's net annual income; and while this percentage should not be construed to be a rule regarding the amount which the debtor should provide in the future toward his son's educational expenses, this figure is sufficient in the instant case to meet the debtor's obligations to provide the most excellent and suitable education for his son within the debtor's means.

■ This Court must also address the question of the dischargeability of any arrearage of child support owed by Mr. Harrell. There clearly is a present need on Mr. Harrell's son's behalf for the receipt of support while attending school. Furthermore, this Court finds that there was a need for child support at the time the debtor and Mrs. Sharp entered into their separation agreement. Accordingly, the arrearage of child support which Mr. Harrell owed at the time of the filing of his voluntary petition under Chapter 7 of the Bankruptcy Code is hereby declared to be nondischargeable.

The Court reminds the debtor of his representations that as his economic circumstances improve, he would provide further assistance to his son toward meeting his educational expenses. At any time that there is a material change in the debtor's economic circumstances, the debtor's son may seek an increase in the $300.00 per month payments which he is to receive from the debtor commencing October 1, 1982.

## MODIFICATION OF THE SEPARATION AGREEMENT

Earlier in this Order, the Court has discussed the reasons why it believes it has jurisdiction concerning the separation agreement. To the extent that a modification of the separation agreement is still desired by the debtor, this Court will abstain from hearing these issues in accordance with the provisions of 11 U.S.C. § 305.

Therefore, for the above-stated reasons, the debtor's alimony obligation to Mrs. Sharp is hereby declared to be dischargeable, and the debtor's past and present obligation to provide for the support and education of his son is hereby declared to be nondischargeable.

IT IS SO ORDERED.