**In re Thomas E. STONE, Debtor.**

**Thomas E. STONE, Plaintiff,**

v.

**Elaine N. STONE, Defendant.**

**Bankruptcy No. 86–4–2331.
Adv. No. 87–0004A.**

United States Bankruptcy Court,
D. Maryland.

Nov. 9, 1987.

Janet Nesse, Silver Spring, Md., for plaintiff-debtor, Thomas E. Stone.

Walter Johnson, Silver Spring, Md., for defendant, Elaine N. Stone.

Melvin Feldman, Rockville, Md., Trustee of Chapter 7 estate.

### MEMORANDUM OF DECISION

PAUL MANNES, Chief Judge.

This case illustrates the tension existing between two principles—the goal of the Bankruptcy Code to provide a fresh start to the honest debtor and the obligation (also recognized under § 523(a)(5) of the Bankruptcy Code) to support one's spouse and children. At issue is whether a bankruptcy court may consider circumstances existing at the time of the filing of the bankruptcy petition in determining whether payments required by a pre-existing Voluntary Separation and Property Settlement Agreement are excepted from discharge. 11 U.S.C. § 523(a)(5). The agreement in question imposed upon this debtor is a monthly payment of $7,000, together with an obligation to pay certain health insurance and life insurance premiums. Some time after the execution of the agreement, debtor sustained a severe financial setback.

### FACTS

Thomas E. Stone ("Thomas" and "debtor") and Elaine N. Stone ("Elaine") were married on July 7, 1956. Two children were born of the marriage, both of whom are over 18 years of age. The parties separated on February 6, 1983. On August 11, 1983, with the assistance of counsel, the parties entered into a Voluntary Separation and Property Settlement Agreement ("Agreement"). The pertinent provisions of the Agreement are as follows:

### II. SUPPORT OF THE WIFE

3. The Husband shall pay to the Wife, as alimony, for her support and maintenance the following sums on the terms and conditions set forth herein:

(a) Commencing September 1, 1983 and continuing on the first day of each month thereafter until terminated as provided elsewhere in this Part II, the sum of Seven Thousand ($7,000.00) Dollars, each month.

(b) The provision in subparagraph (a) above requiring the Husband to pay alimony to the Wife shall not be subject to any Court modification pursuant to Article 16, Section 28, of the Annotated Code of Maryland.

(c) Except as expressly provided in subparagraph (a) above the Wife hereby waives any right or claim she now or hereafter may have against the Husband for alimony, support or maintenance, temporary or permanent, for herself, without regard to any future circumstances. The parties understand and intend this provision to be a

waiver consistent with Md.Code Ann. Art. 16, Section 28.

(d) The Husband's obligation to pay alimony under this Section II shall terminate upon the remarriage of the Wife or the death of either party and shall not be a charge upon the Husband's estate, except for arrearages.

\* \* \* \* \* \*

## III. PROPERTY OF THE PARTIES

### 4. *Joint Property Partition/Division*

(e) On or before October 15, 1984, the Husband shall pay to the Wife, in cash, the sum of One Hundred and Fifty Thousand ($150,000) Dollars. This indebtedness shall be secured by a Promissory Note to be executed contemporaneously with this Agreement containing interest at the rate of twelve percent (12%) per annum with the interest to be paid quarterly.

\* \* \* \* \* \*

### IV. INSURANCE

5. *Health.* The Husband shall maintain in full force and effect and shall pay all premiums for full medical and dental health insurance for the Wife until such time as she may remarry. At the present time the Husband has a policy through his employer (Tesdata Systems, Inc.) which provides coverage for the Wife. The Husband shall keep this policy in effect for so long as he is able to do so under the provisions of the policy. If for any reason whatsoever the Wife cannot be covered under the Husband's present policy he shall provide and pay for a comparable policy of health and dental insurance containing, at a minimum, the same benefits the Wife is entitled to under the present policy.

6. *Life.* The Husband represents that his life is insured under various policies paid for by his employer in a face amount of approximately One Million ($1,000,000.00) Dollars.

The Husband agrees that he will continue to maintain the Wife as beneficiary thereon as follows:

(a) The Wife shall be the designated sole primary beneficiary of the above-mentioned life insurance policies until such time as she may remarry. Thereafter, the two (2) children shall be named the equal co-beneficiaries of the insurance.

(b) If the Husband fails to pay the premiums, the Wife shall have the option to pay the same. If the Wife elects to pay any premiums upon the Husband's failure to do so, the Husband shall forthwith become indebted to the Wife in the sum or sums so paid.

(c) If the Wife and/or children do not receive the amounts they are entitled to receive (approximately $1,000,-000.00), i.e., the full proceeds of the Husband's insurance policy, then notwithstanding anything to the contrary contained elsewhere in this Agreement, the Wife shall have a creditor's claim against the Husband's estate for the difference between $1,000,000.00 and the amount she actually receives thereon upon the Husband's death.

After execution of the Agreement, Thomas obtained a divorce in the District of Columbia. As noted, he fell on comparatively hard times. His Tesdata Systems Corporation stock, valued at $12 a share in August, 1983, was valued by him at the time of filing this case as 34,000 shares valued at $.22 or $7,500. His option to purchase up to 120,000 shares is shown as worthless. His employment as Chief Executive Officer of Tesdata has been terminated. He will receive $8,555 per month severance pay until the end of 1987 or $6,610 after taxes. He devotes $3,150 of this sum to the payment of a mortgage upon a residence held by himself and his present wife as tenants by the entirety. Debtor's Schedule A-3 shows the following obligation owed to Elaine at the time of filing of the petition:

| | |
|---|---|
| Alimony | $ 67,000.00 |
| Promissory note | 145,552.14 |
| Attorneys' fees | 15,000.00 |
| Obligation for payment of life & health insurance | Unknown |

Elaine sought enforcement of the obligations described. While Thomas obtained a divorce in the District of Columbia, the

Agreement remained enforceable under Maryland law by Elaine in the State of Maryland. A specific performance action was filed, and Elaine sought the contempt power of the Maryland court to enforce the payments under the 1983 Agreement. Because of the provision of paragraph II(c) of their Agreement, under Maryland law Thomas was unable to obtain a reduction of the monthly payment just as Elaine was unable to obtain an increase.[1] Under Maryland law, such agreements could be modified only in the event the Agreement was so oppressive as to shock the conscience of the court, *Williams v. Williams*, 306 Md. 332, 508 A.2d 985 (1986), or if the agreement was the product of mistake, collusion, or fraud. *Frana v. Frana*, 12 Md.App. 273, 278 A.2d 94 (1971).

On September 25, 1986, an involuntary Chapter 7 bankruptcy petition was filed against Thomas by ITT Commercial Finance Corporation. He consented to an Order for Relief that was entered on October 24, 1986. Thomas has filed this complaint to determine debt dischargeability; specifically, he seeks a determination as to:

1. The obligation to make monthly payments and to determine what portion of the monthly obligation is actual and necessary alimony;

2. The balance on the promissory note;

3. The obligation to pay insurance premiums.

Elaine concedes that the balance due on the Promissory Note is a dischargeable debt. Thomas does not contend that because one part of the agreement may no longer be enforced that the remainder is unenforceable.[2] This leaves for determination the question as to whether the $7,000 monthly payments are dischargeable in part and to what extent insurance premiums are dischargeable.

The first issue is whether the obligations fall within the § 523(a)(5) exception to the debtor's discharge under § 727. If the answer is "yes" to the first issue, then the court must deal with the second point raised by Thomas. He argues that the award should be dischargeable to the extent it exceeds Elaine's present actual needs.

## ANALYSIS

■ The relevant section of the Bankruptcy Code provides:

§ 523 *Exceptions to discharge*

---

1. The parties expressly subjected their Agreement to a provision of the Maryland Code then effective. The pertinent section of MD.CODE ANN. Art. 16, § 28 (1981), provided:

    § 28. *Effect of agreement and settlements between parties.*
    ... Furthermore, any provision in the deed or agreement in respect to alimony, support and maintenance of the husband or wife is subject to modification by the court to the extent the court deems just and proper regardless of the manner in which the provisions with respect to the alimony, support and maintenance are expressed or stated unless there is an express waiver of alimony, support and maintenance by the husband or wife or unless the provisions of the deed, agreement, or settlement specifically state that the provisions with respect to the alimony, support and maintenance of the husband or wife are not subject to any court modification.
    This section has been recodified as MD. FAM.LAW CODE ANN. § 8–103(b) and (c) (1984), which provides:
    § 8–103. *Modification of deed, agreement, or settlement*
    (b) *Exception for provision concerning support of spouse.*—The court may modify any

provision of a deed, agreement, or settlement with respect to spousal support executed on or after January 1, 1976, regardless of how the provision is stated, unless there is a provision that specifically states that the provisions with respect to spousal support are not subject to any court modification.
    (c) *Certain exceptions for provision concerning alimony or support of spouse.*—The court may modify any provision of a deed, agreement, or settlement with respect to alimony or spousal support executed on or after April 13, 1976, regardless of how the provision is stated, unless there is:
    (1) an express waiver of alimony or spousal support; or
    (2) a provision that specifically states that the provisions with respect to alimony or spousal support are not subject to any court modification.

2. The Agreement of the parties provided:
    If any provision or term of this Agreement is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

Under the prior Bankruptcy Act, the Fourth Circuit in *Melichar v. Ost,* 661 F.2d 300 (4th Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982), was faced with the issue of "whether the bankrupt's obligation to make certain payments to his former wife pursuant to a marital settlement agreement was a debt for 'alimony' within the meaning of § 17(a)(7) of the pre–1978 Bankruptcy Act, 11 U.S.C. § 35(a)(7) so as to except it from discharge." Section 35(a)(7) provided as an exception from the discharge in bankruptcy "provable debts for alimony due or to become due, or for maintenance or support of wife or child ..." In determining that the balance due under an agreement to pay $66,550 in monthly installments of $550 for a period of 121 months was not discharged, the Fourth Circuit stated:

We do not doubt that classification of an agreement under state law is an important factor in determining if the parties intended an agreement to provide for the payment of alimony within the meaning of § 35(a)(7). But we do not foreclose the possibility that the agreement may be a hybrid of two means of paying alimony recognized by state law, and the fact that it combines features of both, does not automatically destroy the nature of the payments as alimony. *The proper test of whether the payments are alimony lies in proof of whether it was the intention of the parties that the payments be for support rather than as property settlement.* Shacter v. Shacter, 467 F.Supp. 64 (D.Md.), aff'd without published opinion, 610 F.2d 813 (4 Cir.1979); Nichols v. Hensler, 528 F.2d 304 (7 Cir.1976); 3 Collier on Bankruptcy ¶ 523.15, at 523–111 (1981 ed.)

The district court's second error was in treating as clearly erroneous the factual finding of the bankruptcy court that the parties intended payments under the agreement as support and maintenance of the wife and not as a property settlement. To a considerable extent it appears that this error stemmed from the district court's underlying premise that an intention to constitute payments as support could only be proved by showing that the payments qualified as alimony under state law. In any event, the testimony of Melichar and Mrs. Ost both support the bankruptcy court's finding that the parties intended the payments under the agreement as support: Melichar said that the payments were intended to maintain his wife's economic position as during marriage and Mrs. Ost said that the payments were made to enable her to meet her living expenses after the divorce as budgeted by Melichar and his attorney.

(Emphasis added.) 661 F.2d at 303, *Cf. Tilley v. Jessee,* 789 F.2d 1074, 1078 n. 4 (4th Cir.1986).

Because we conclude that mutual intent to create a support obligation was not shown in this instance, we express no position with regard to the importance of the additional factors cited by the district court. Intent clearly remains the threshold that must be crossed before any other concerns become relevant.

Both *Tilley* under the Code and *Melichar* under the Act direct this court to find, if it

can, the mutual intention of the parties from the evidence offered as well as from a consideration of the Agreement itself. The Fourth Circuit in *Melichar* reinstated the finding of the bankruptcy judge of the nondischargeability of the obligation. That finding was based upon

"... the testimony of Melichar that the money was paid to his former wife to be used by her to maintain the same economic position as she had previously maintained during their marriage, and the testimony of the wife that she and her husband budgeted her expenses and arrived at the amount of monthly installments to be paid to her to enable her to support herself while she became settled."

The Fourth Circuit continued:

"As a conclusion of law, the bankruptcy judge stated that the '[t]estimony of the parties indicates that the amount payable to the wife was to maintain her economic position and the Court concludes that it is in the nature of alimony and is non-dischargeable.'"

*Melichar,* 661 F.2d at 302.

In the case of *In re Coffman,* 52 B.R. 667, 13 C.B.C.2d 553, B.L.R. (CCH) ¶ 67,631 (BC Md.1985), this court was presented with a § 523(a)(5) claim arising out of a decree entered upon termination of a marriage. A list was constructed of 18 factors to be considered in distinguishing between nondischargeable alimony and support allowed by a court on one hand and a dischargeable property division on the other.

1. Whether there was an alimony award entered by the state court.
2. Whether there was a need for support at the time of the decree; whether the support award would have been inadequate absent the obligation in question.
3. The intention of the court to provide support.
4. Whether debtor's obligation terminates upon death or remarriage of the spouse or a certain age of the children or any other contingency such as a change in circumstances.
5. The age, health, work skills, and educational levels of the parties.
6. Whether the payments are made periodically over an extended period or in a lump sum.
7. The existence of a legal or moral "obligation" to pay alimony or support.
8. The express terms of the debt characterization under state law.
9. Whether the obligation is enforceable by contempt.
10. The duration of the marriage.
11. The financial resources of each spouse, including income from employment or elsewhere.
12. Whether the payment was fashioned in order to balance disparate incomes of the parties.
13. Whether the creditor spouse relinquished rights of support in payment of the obligation in question.
14. Whether there were minor children in the care of the creditor spouse.
15. The standard of living of the parties during their marriage.
16. The circumstances contributing to the estrangement of the parties.
17. Whether the debt is for a past or future obligation, any property division, or any allocation of debt between the parties.
18. Tax treatment of the payment by the debtor spouse.

Although the present case involves an agreement between the parties as distinguished from a court decree determining parties' rights, the 18 *Coffman* factors are relevant as an aid in distinguishing alimony from a property division, as well as providing for an additional tool for the court to use in extracting the intention of parties when that intent is not apparent as it is in the present case.

Turning to the case at hand, the court finds as a fact that it was the mutual intention of the Stones to create a support obligation to maintain Elaine in the style they enjoyed while living together. The debtor testified that he looked at the $7,000 monthly payment as a support payment. In anticipation of negotiations with Elaine prior to concluding the Agreement, Thomas

prepared, in his own handwriting, figures that nearly justified this size expenditure as support. It was pointed out on cross-examination that the debtor deducted the amount of alimony paid from his gross income, just as alimony received by Elaine was subject to income tax upon receipt. This income tax payment, when added to Thomas' schedule of Elaine's needs, approximated the agreed amount. Except for a portion of the first year of their marriage, Elaine had not worked in the 28 years that the parties were married. Thomas was the provider of this grand standard of living and he was the source of the combined $2,000,000 net worth shown on his personal financial statement.

■ The court believes that it has completed the task at hand as directed by *Melichar* and reaffirmed by *Tilley* by its finding that the shared intent of the parties was that the $7,000 monthly payment was for Elaine's support. Thomas urges that the court should also inquire as to the current financial circumstances of the parties. Quoting *In re Calhoun*, 715 F.2d 1103, 1110 (6th Cir.1983), Thomas pleads that "an excessive allowance is at odds with the fresh start concept underlying federal bankruptcy law." Debtor goes on to point out that he may not seek modification in state court. He wants to be relieved from having "to live out [his] life under the burden of an error of judgment." Plaintiff's Memorandum, p. 4., Elaine argues to the contrary. For a start, one may consider the Annot., 69 A.L.R.FED. 403, 410–414 (1984), DEBTS FOR ALIMONY, MAINTENANCE, AND SUPPORT AS EXCEPTIONS TO BANKRUPTCY DISCHARGE, UNDER § 523(a)(5) OF BANKRUPTCY CODE OF 1978 (11 U.S.C.S. § 523(a)(5)).

After a review of the authorities, the court concludes that the better reasoned cases share the viewpoint that the changed circumstances from the time of a separation agreement have no relevance in determining a § 523(a)(5) issue. Two sound reasons underlie this position. First, it is

abundantly clear when considering the language of §§ 523(a)(5)(B) and 523(a)(8)(B) side by side that Congress did not intend anything other than an absolute exception to discharge in § 523(a)(5).

§ 523  *Exceptions to discharge*

(a) A discharge under section 727, 1141, *1228(b),* or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce [decree,] *decree* or other order of a court of record, *determination made in accordance with State or territorial law by a governmental unit,* or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

\*       \*       \*       \*       \*       \*

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.[3]

The language of § 523(a)(5)(B) does not invite an inquiry into present circumstances such as is required by § 523(a)(8)(B). The omission of a similar provision in § 523(a)(5) is convincing evidence of Congressional intent not to have bankruptcy courts become enmeshed in ongoing financial disputes between a debtor and a present or former spouse. A logical analysis of the construction of § 523 allows no other result.

---

**3.** While the rule of decision in this case is governed by the Bankruptcy Code as amended by P.L. 98–353, the underscoring and deletions

(brackets) refer to changes made by P.L. 99–554, enacted October 27, 1986, and effective November 26, 1986.

The second reason is grounded in the long-standing policy of confining the whole subject of domestic relations to the state courts of domicile of husband and wife. *See e.g., Rose v. Rose,* —— U.S. ——, 107 S.Ct. 2029, 2033, 95 L.Ed.2d 599 (1987); *Simms v. Simms,* 175 U.S. 162, 167, 20 S.Ct. 58, 60, 44 L.Ed. 115 (1899); *In re Burrus,* 136 U.S. 586, 593–594, 1 S.Ct. 850, 853, 34 L.Ed. 500 (1890); *Barber v. Barber,* 21 Howard 582, 604–05, 16 L.Ed. 226 (1859); *Caswell v. Lang,* 757 F.2d 608, 610 (4th Cir.1985). The exceptions dealing with conflicting federal enactments, *Ridgway v. Ridgway,* 454 U.S. 46, 54–55, 102 S.Ct. 49, 54–55, 70 L.Ed.2d 39 (1981); *Meade v. Meade,* 812 F.2d 1473, 1475–76 (4th Cir. 1987) (Federal courts have jurisdiction pursuant to Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A), or with questions of constitutionality of the application of state law, *Orr v. Orr,* 440 U.S. 268, 276, 99 S.Ct. 1102, 1110, 59 L.Ed.2d 306 (1979), have no application here.

At this point, it is useful to review the reported circuit court cases dealing with this issue. In the Ninth Circuit the decision of the Bankruptcy Appellate Panel was affirmed on other grounds. The Tenth Circuit discussed the issue but did not need to reach the issue to make its decision. The Second, Eighth, and Eleventh Circuits rejected the relevancy of needs test. As of this writing, the Sixth Circuit stands alone in holding that the changed circumstances or need of the recipient spouse or child is relevant as of the filing of the petition. The court has prepared an appendix of the rulings throughout the circuits.

## INSURANCE

■ There remain two other issues, that is, the controversies involving the obligation to provide health insurance and life insurance. The question of health insurance is an easy call. It is hard to contemplate any area of one's daily life that is more susceptible to unanticipated financial burdens than that brought on by illness. The requirement that Thomas provide "all premiums for full medical and dental health insurance" is clearly related to her support and well being. Uninsured medical calamities are capable of impoverishing most families. In negotiating their agreement, Thomas and Elaine must have appreciated the fact that it was impossible to predict the amount of funds required to carry the appropriate insurance. Modification was forbidden. For that reason there remained the burden on the debtor to continue health insurance with its varying premium.

■ The question of life insurance is a more difficult one. It is true, under state law there is no requirement to pay alimony after death, unless the parties were to place a charge upon their estates. Under Maryland law alimony terminates upon the death of either party or on the marriage of the recipient.[4] Nonetheless, the court finds that the parties understood that upon the death of Thomas, the needs of Elaine would continue. Regardless of whether the alimony obligation would cease under Maryland law, as is certain from the opinion of *Melichar v. Ost,* 661 F.2d 300 (4th Cir.1981), the question is as to the intention of the parties respecting the life insurance as intended support for Elaine. In the recent case of *In re Grijalva,* 72 B.R. 334 (S.D.W.Va.1987), the District Court was confronted with the precise issue as in the instant case regarding dischargeability of life insurance debt. Earlier, the bankruptcy court held that Dr. Grijalva's obligation to keep the life insurance policy in effect on his life was nondischargeable and found that the policy was "the safety-net of the child support and alimony." *See Grijalva,* 72 B.R. at 337.

The Bankruptcy Court concluded that it was "a foundation that should be kept in place to protect the family." *Id.* The doctor retorts that the policy is an un-

---

4. MD.FAM.LAW CODE ANN. § 11–108 provides:

§ 11–108. *Termination of Alimony.*
Unless the parties agree otherwise, alimony terminates:

(1) on the death of either party;
(2) on the marriage of the recipient; or
(3) if the court finds that termination is necessary to avoid a harsh and inequitable result.

warranted expense which does not provide *immediate* support and maintenance for the family. The Court disagrees.

*See id.*

On appeal, the District Court agreed with the bankruptcy court's finding that the life insurance policy was in the nature of alimony, support, and maintenance based on the fact that the Grijalva family was completely dependent upon Dr. Grijalva for support. *See Grijalva*, 72 B.R. at 337. For additional cases on this issue, *see e.g., In re Proctor*, 42 B.R. ˉ537, 540 (BC E.D.Mo.1984) ("Assuming that these policies insure Rick's life, then the obvious intent of this provision was to provide a measure of security for Rick's child support obligation and, *ipso facto*, the provision is also 'in the nature of ... support' within the meaning of 11 U.S.C. § 523(a)(5)."); *In re Lineberry*, 9 B.R. 700 (BC W.D.Mo.1981) (court held insurance obviously in nature of support and maintenance, "insurance provides a relatively painless manner of achieving this objective and providing for the children's future"). *See also*, Annot., 69 A.L. R.FED. 403, 476 (1984).

Based on the circumstances of the parties at the time, the fact that one was perceived to have continuing earning power and the other perceived as having no earning power, the court infers that it was the intention of the parties to use the proceeds of the insurance policy upon the life of Thomas to continue the support payments for Elaine, notwithstanding the testimony of Thomas to the contrary. Once the direct obligation for Elaine under 6(a) of the Agreement is completed, the obligation of Thomas ceases.

An order will be entered in accordance with the foregoing.

## APPENDIX

**FIRST CIRCUIT**—The court's research reflects no Circuit Court decisions. One reported bankruptcy court case found no relevancy in a consideration of the present needs. *In re Gibson*, 61 B.R. 997, 999 (BC N.H.1986) ("It is important to note in this regard that *subsequent* transactions or changes in conditions affecting the parties have no bearing on the decision a bankruptcy court has to make in construing a § 523(a)(5) issue.")

**SECOND CIRCUIT**—The Second Circuit in *Forsdick v. Turgeon*, 812 F.2d 801 (2d Cir.1987), had the most recent opportunity to review the question of whether the bankruptcy court should consider changed circumstances of parties in determining dischargeability of an alimony award. In affirming the judgment that a $100,000 obligation was actually in the nature of alimony and not dischargeable, the Second Circuit went on to discuss the minority and majority views on consideration of "changed circumstances:"

**B.  *The Relevance of "Changed Circumstances."***

As a secondary position the husband argues that even if the $100,000 award was in the nature of alimony and hence was nondischargeable under § 523(a)(5), the bankruptcy court should have taken notice of the alleged "changed circumstances" of the parties and held that because the wife apparently no longer requires the support granted to her by the state court decision, the obligation is dischargeable despite the language of § 523(a)(5). For support the husband cites *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983), in which the sixth circuit held that the bankruptcy court "must ... inquire whether [an obligation intended as alimony or support] has the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied.... If the [obligation] is not found necessary to provide such support, the inquiry ends and the debtor's obligation must be discharged." 715 F.2d at 1109; *see also id.* at 1110 n. 11. The court acknowledged that its decision meant that bankruptcy courts would, in effect, be modifying the judgments and decrees of state courts. *Id.* at 1109–10 n. 10. *Calhoun* is therefore strongly supportive of the husband's contention that the bankruptcy court should consider any changes in the finan-

cial situation of the wife (but not in that of the husband; *see Yeates v. Yeates (In re Yeates)*, 44 B.R. 575, 580 (D.Utah 1984)) in evaluating the nature of the $100,000 award. However, *Calhoun* is an example of a minority view on this question, as the husband concedes, and we find the majority view to be far more persuasive. We therefore reject the reasoning of the sixth circuit and of those other courts that have adopted its stance. *See, e.g., Warner v. Warner (In re Warner)*, 5 B.R. 434, 442–43 (Bankr.D.Utah 1980).

An inquiry of the sort urged by the husband would put federal courts in the position of modifying the matrimonial decrees of state courts, thus interfering with the delicate state systems for dealing with the dissolution of marriages and the difficult and complex results that flow therefrom. *See Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 907 (11th Cir.1985). State-crafted family law mechanisms should not be disturbed by federal court intervention unless there is an unmistakable mandate from congress to do so in order to achieve a valid federal objective.

We find no such mandate here. To the contrary, congress has clearly required the bankruptcy court to protect the rights of a former spouse receiving alimony at the expense of a debtor seeking a fresh start. The husband's argument would turn this legislative intent on its head by having the bankruptcy court entertain arguments about, and deciding issues of dischargeability on the basis of, a continuing need for support instead of protecting the award previously found by the state courts to be appropriate.

Had congress wished the bankruptcy court to consider the current impact of its decision on the parties in determining whether an alimony debt is dischargeable, it could easily have so provided. Indeed, for educational loan obligations congress did exactly that in § 523(a)(8) which treats student loans as nondischargeable *unless* "excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents". When read alongside § 523(a)(8), the alimony exception in § 523(a)(5) can be interpreted only as an absolute exception to discharge. *See Benz v. Nelson (In re Nelson)*, 20 B.R. 1008, 1011 n. 3 (M.D.Tenn.1982).[1]

There is no support in the language of § 523(a)(5) for the husband's position. As the eleventh circuit noted in *Harrell*, 754 F.2d at 906, "[t]he language does not suggest a precise inquiry into financial circumstances to determine precise levels of need or support; nor does the statu-

---

**1.** The footnote from *Benz v. Nelson (In re Nelson)* states:

3. Comparison of section 523(a)(8) and section 523(a)(5) illustrates two alternative approaches that were available to Congress when considering the bankruptcy act: (1) to create absolute exceptions to discharge, as in section 523(a)(5); or (2) to permit bankruptcy courts to weigh various factors when determining whether to discharge a debt, as in section 523(a)(8). Section 523(a)(8) applies to educational loans. It provides:

A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of repayment period) before the date of the filing of the petition; or

(B) *excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;* ... (emphasis added).

The structure of section 523(a)(8) reflects Congressional intent to permit bankruptcy courts to use a balancing process when determining whether or not to except an educational loan from discharge. The structure of section 523(a)(5) does not reflect such an intent. Instead, as noted *infra,* judicial discretion under section 523(a)(5) is limited to determining whether a particular debt is in fact in the nature of alimony, maintenance, or support. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 264, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 6320. *See generally* 124 Cong. Rec. 1791 (1978) (remarks of Rep. Ertel, sponsor of the amendment that is now codified as § 523(a)(8) 124 Cong.Rec. 1793 (1978) (remarks of Rep. Dodd).

*Benz v. Nelson,* 20 B.R. at 1011.

tory language contemplate an ongoing assessment of need as circumstances change." To be exempt from discharge an award of alimony or support does not have to conform exactly to some level that a bankruptcy judge might deem necessary for maintenance of a former spouse or children; it merely has to be "in the nature of" alimony or support. In short, there is no warrant for a federal bankruptcy court to evaluate the state court's alimony award against the needs of the former spouse to whom it was granted. *See Boyle,* 724 F.2d at 683 (bankruptcy court should not "examine the present situation of the parties").

*See Forsdick v. Turgeon,* 812 F.2d at 803–804. As in the instant case, the Second Circuit was confronted with an alimony payment that was not subject to state court modification. Debtor here urges that he is prevented from attaining the basic goal of the honest debtor—the fresh start.[2] This question was answered by the Circuit Court:

> As a more moderate, alternative contention the husband suggests that the federal court should look to changed conditions where modification of the award at issue would be unavailable in state court, as he argues is the case here. It is true that some courts that have declined to examine changed circumstances have pointed to the availability of a state modification procedure as one factor in their decision. *See, e.g., Harrell,* 754 F.2d at 907 n. 8. None, however, has found that particular consideration to be decisive, and we question even its relevance, because the decision not to make modification available to the obligated spouse reflects a state-made policy decision in the area of domestic relations, an area into which we are loath to intrude. *Cf. Simms v. Simms,* 175 U.S. 162, 167, 20 S.Ct. 58, 60, 44 L.Ed. 115 (1899)

("[T]he whole subject of the domestic relations of husband and wife ... belongs to the laws of the state").

*See Forsdick v. Turgeon,* 812 F.2d at 804.

THIRD CIRCUIT—The court's research has disclosed one reported case within the Third Circuit on this issue. *Matter of Lesher,* 20 B.R. 543, 544 (BC W.D.Pa.1982). The court stated it was convinced of Mrs. Lesher's current need for support. "It is in this context that the present question of dischargeability arises." Nothing further was said regarding the study of changed circumstances, although debtor had argued unsuccessfully that there was nothing in the record to support the need or legal responsibility for support of his former spouse.

FOURTH CIRCUIT—The court's research has disclosed no cases other than *Melichar* and *Tilley.*

FIFTH CIRCUIT—Again, there appears to be only one relevant case within the circuit. After citing majority and minority authorities, the court held that bankruptcy courts should refrain from making inquiries into the relative financial positions of parties. *In re Bell,* 61 B.R. 171, 177 (BC S.D.Tex.1986). Similar to the argument advanced by the debtor in the instant case, the debtor in *Bell* urged the bankruptcy court to consider the changed circumstances of the debtor subsequent to the time when the obligation originally arose. Debtor requested the court to consider his current general inability to pay and to discharge the support obligation to allow him the "fresh start" intended under the Code. *See Bell,* 61 B.R. at 176. The court following the majority view noted:

> The majority, however, hold that a bankruptcy court may not consider circumstances subsequent to the agreement providing support to the debtor's wife and children, nor any circumstances ex-

---

**2.** In the course of the hearing concerning this dispute, it was pointed out that the bankruptcy court would have to assume continuing jurisdiction of the matters in issue concerning the ability of Thomas Stone to pay the agreed upon alimony. If it were otherwise, then Thomas would be able to present to the court a program for diminishing alimony that would be mono-

tonic and irreversible. Another point for speculation concerns possible strategy for negotiating by payor spouses in Maryland. One might agree to immutable alimony payments safe in the knowledge that the payment could never rise. At the same time, if Mr. Stone were correct, one could always seek a reduction.

isting at the time the debtor's petition was filed.

*See id.* The court in refusing to consider "changed circumstances" held that bankruptcy courts should be restricted to a determination of the nature of obligation at the time of the state court decree of divorce. *See Bell,* 61 B.R. at 176. In considering debtor's "fresh start" argument, the court noted:

> Although the policy justification for granting a debtor a discharge in bankruptcy is to provide him with a "fresh start" in life "... unhampered by the pressure and discouragement of pre-existing debt," competing policy reasons led Congress to explicitly except from discharge support obligations owed a spouse and child. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

*See Bell,* 61 B.R. at 176 n. 7.

SIXTH CIRCUIT—Among the circuit courts, only the Sixth Circuit has permitted inquiry into the changed circumstances of the parties. *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983), and *In re Singer,* 787 F.2d 1033, 1036 (6th Cir.1986) (concurring opinion), set forth four factors for determining whether the payments by a debtor are in the nature of alimony or property settlement:

> (a) whether the *intent* of the state court or the parties was to create a support obligation;
>
> (b) whether the support provision has the actual *effect* of providing necessary support;
>
> (c) whether the amount of support is so excessive as to be *unreasonable* under traditional concepts of support; and
>
> (d) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law.

*In re Singer,* 787 F.2d at 1036 (concurring opinion). The *Singer* court repeated what the Sixth Circuit had said earlier in *Calhoun:*

If the bankruptcy court finds, as a threshold matter, that assumption of the debts [or, in this case, monthly payments] was intended as support it must next inquire whether such assumption has the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied. The distribution or existence of other property, for example, may make the continuing assumption of joint debts unnecessary for support, as might drastic changes in the former spouse's capabilities for self-support. Substance must prevail over form.

715 F.2d at 1109. The court also stated:

If the circumstances of the debtor have changed from the time of the obligation to the former spouse to pay joint debts was created so as to make such support now inequitable the bankruptcy court may consider the debtor's *current* general ability to pay insofar as it relates to the *continuing* obligation to assume the joint debts.

715 F.2d at 1110 n. 11. *See also Johnson v. Seta (Matter of Seta),* 45 B.R. 8, 9 (Bankr.S.D.Ohio 1984) (where the court looked at the plaintiff's present needs, relying on *Calhoun* ). The above analysis is again precisely that undertaken by Judge Sidman.

*In re Singer,* 787 F.2d at 1038.[3]

Prior to *Calhoun,* the courts within the Sixth Circuit were lined up on either side. For cases which have expressly or impliedly considered the "changed circumstances" of parties in a § 523(a)(5) determination, *see e.g., In re Plaugher,* 37 B.R. 760 (BC N.D.Ohio 1984); *In re Singer,* 18 B.R. 782 (BC S.D.Ohio 1982); *In re Miller,* 17 B.R. 773, 36 B.R. 403 (BC N.D.Ohio 1982); *In re Brace,* 13 B.R. 551 (BC N.D.Ohio 1981). For cases where the court declined to consider "changed circumstances" of parties, *see e.g., Benz v. Nelson (In re Nelson),* 20 B.R. 1008 (M.D.Tenn.1982); *In re Vickers,* 24 B.R. 112, 7 C.B.C.2d 849, B.L.R. (CCH) ¶ 68867 (BC M.D.Tenn.1982);

---

**3.** It has been pointed out that the inquiry described in the *Calhoun* goes to ongoing support obligations and not past-due support obligations. *In re Troxell,* 67 B.R. 328, 331 n. 3 (BC S.D.Ohio 1986).

*Matter of Gentile,* 16 B.R. 381 (BC S.D. Ohio 1982).

SEVENTH CIRCUIT—Two bankruptcy courts have reached different results. In *Matter of Miller,* 17 B.R. 717 (BC W.D. Wis.1982), the debtor moved to dismiss the complaint of his former wife who sought an order declaring debtor's support arrearages to be nondischargeable. Although the court denied debtor's motion, it did so only because no evidence was presented on the present circumstances of the parties.

> Before a determination of dischargeability can be made, the court must be presented with evidence of the present circumstances of the person to whom and the person on whose behalf the support was ordered paid. If the ordered payment continued to be necessary for the support ordered as of the date the petition in bankruptcy was filed by the defendant, the debt would be nondischargeable.

*See Miller,* 17 B.R. at 720. The *Miller* court relied heavily on the rationale used by Judge Mabey in *In re Warner,* 5 B.R. 434, 6 B.C.D. 788, B.L.R. (CCH) ¶ 67,631 (BC Utah 1980) in allowing debts for alimony or child support to be dischargeable under certain circumstances:

> It seems reasonable to conclude that for a debt to be nondischargeable under either Section 17a(7), ... or 11 U.S.C. § 523(a)(5), payment of the debt must be reasonably necessary for the support and maintenance of spouse and children both at the time the debt was imposed in the divorce decree and at the time the discharge of the debt is attempted, or, in other words, at the time the bankruptcy petition of the debtor-spouse if filed.

*See Miller,* 17 B.R. at 720 (quoting *In re Warner,* 5 B.R. 434, 6 B.C.D. 788, B.L.R. (CCH) ¶ 67,631 (BC Utah 1980).

*In re Fryman,* 67 B.R. 112 (BC E.D.Wis. 1986), the court declined to follow *Warner* and *Miller.* In *Fryman* the plaintiff-debtor sought a declaratory judgment that his support obligations to the State of Wisconsin and to his former wife were discharged. The debtor, relying on *Miller,* advanced that he was no longer legally obligated to provide support and that the recipient party did not presently have any need for the past due payments for support, and thus the entire arrearage should be a dischargeable debt. *See Fryman,* 67 B.R. at 113. Electing to rely on *In re Harrell,* 33 B.R. 989 (N.D.Ga.1983), *aff'd* 754 F.2d 902 (11th Cir.1985), and *In re Schack,* 46 B.R. 520 (BC S.D.Fla.1985), the court rejected the debtor's argument and held that the support obligations were nondischargeable. This conclusion was reached despite the fact that the ex-wife had remarried and the two minor children had grown up and married. *See Fryman,* 67 B.R. at 113–114.

EIGHTH CIRCUIT—Two opinions of the Eighth Circuit uphold the majority view. *In re Draper,* 48 B.R. 37, 12 B.C.D. 1229 (BC E.D.Ark.1985) *aff'd In re Draper,* No. H–C–85–53 (E.D.Ark.1985) *aff'd Draper v. Draper,* 790 F.2d 52–54, (8th Cir.1986), also dealt with an unmodifiable decree and a debtor's initial attempt to reject a child custody and support agreement. On appeal, the court stated:

> For reversal appellate argues that the district court should have adopted a "needs" test similar to that set forth in *In re Calhoun,* 715 F.2d 1103 (6th Cir. 1983), and *Warner v. Warner,* 5 B.R. 434 (Bankr.D.Utah 1980), to determine whether his obligations under the settlement agreement provisions in dispute were "actually in the nature of ... support."

The Eighth Circuit answered:

> [W]e reject the relevancy of "needs" test in determining whether obligations are "actually in the nature of ... support" and thus nondischargeable under 11 U.S. C. § 523(a)(5). *See In re Harrell,* 754 F.2d 902, 906–07 (11th Cir.1985).

Earlier in *Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir.1984), that same court dealt with another debtor's plea of "changed circumstances" because his sons were adults with no present need of support. The court in rejecting the argument stated:

> This argument misses the point. In deciding whether to characterize an agreement as an alimony, maintenance or support obligation or a property settle-

ment, the bankruptcy court does not examine the present situation of the parties. Rather, the crucial question is what function did the parties intend the agreement to serve when they entered into it.

Prior to the decisions of *Boyle* and *Draper*, the courts in the Eighth Circuit were divided. *See Matter of Jensen*, 17 B.R. 537, 540 (BC W.D.Mo.1982) ("[R]ecipient's current need is an irrevelant consideration. . . . this court has the obligation to carefully examine the situations of the parties at the time of the granting of the divorce decree."); *Stranathan v. Stowell*, 15 B.R. 223, 227–28, 5 C.B.C.2d 640, 8 B.C.D. 472 (BC Neb.1981) (I note that § 523(a)(5) does not contain a "needs" test). *Contra In re Voss*, 20 B.R. 598, 603 (BC N.D.Iowa 1982) ("Once Ms. Voss establishes her prima facie case, the burden shifts to Mr. Voss to prove that the $178.00 payments are no longer necessary for Ms. Voss's support.").

NINTH CIRCUIT—The issue in *In re Comer*, 27 B.R. 1018, 1020–21, 10 B.C.D. 294, B.L.R. (CCH) ¶ 69,109 (9th Cir.BAP 1983) *aff'd on other grounds* 723 F.2d 737 (9th Cir.1984) was whether the trial court should have considered evidence showing the debtor's relative financial need compared to his ex-wife's, both at the time of the petition and at the time the support obligation was created, notwithstanding that any amount owed was admittedly child support or alimony. In its analysis of the case, the Bankruptcy Appellate Panel declined to follow the opinion of *In re Warner*, 5 B.R. 434, 6 B.C.D. 788, B.L.R. (CCH) ¶ 67,631 (BC Utah 1980), as support for the proposition that the trial court had a duty to balance the financial health of the debtor with that of his former spouse in determining whether to discharge debts under § 523(a)(5), and that such inquiry was mandated by the legislative intent of the Code in order that a debtor receive a "fresh start."

Prior to *Comer*, one court held, relying on *Warner*, that a court must weigh any new evidence regarding the relative financial status of the parties. *See In re French*, 9 B.R. 464, 4 C.B.C.2d 263, B.L.R.

(CCH) ¶ 68,207 (BC S.D.Cal.1981). Since *Comer*, the decisions have declined the *Warner* invitation. *See In re MacDonald*, 41 B.R. 716 (BC Hawaii 1984) ("If support payments under a decree were not made, they are still nondischargeable and collectible by the wife after the children have reach adulthood."). *See also, In re Griffin*, 39 B.R. 112 (BC W.D.Wash.1984).

There has been some indication that a bankruptcy court, looking at the problem from the "fresh start" perspective, may in effect review the action of the dissolution court and even modify it. *In re Warner*, 5 B.R. 434 (Bkrtcy.D.C.Utah, 1980). However, it is our view that it would be inappropriate for a bankruptcy court to venture into an area so traditionally the province of state courts. Embarking upon such a course would result in two different court systems treating problems of broken families on a continuing basis, with resulting confusion, forum shopping, and, inevitably, exacerbation of a notoriously problem-ridden area of litigation.

*See id.* at 114.

TENTH CIRCUIT—In *In re Yeates*, 807 F.2d 874, 878 n. 3 (10th Cir.1986), the court described but did not address the "changed circumstances" issue:

3. The district court stated that if the debt was assumed in lieu of support payments at the time of the divorce, "the court should determine whether, at the time bankruptcy was filed, the agreement to pay is still necessary for the former spouse to maintain the daily necessities." *Yeates*, 44 B.R. at 580. While at least one circuit has required the court to examine the need for support at the time of the bankruptcy to determine whether a debt is in the nature of support, *Calhoun*, 715 F.2d at 1109, we do not need to reach that issue in this case. The circumstances of the plaintiff have not changed since the divorce.

*See id.* at 878, n. 3. *See also, In re Yeates*, 44 B.R. 575, 580 (D.Utah 1984) ("The *Warner* court was also incorrect in stating that the financial condition of the debtor at the time of bankruptcy is a relevant considera-

tion. *Warner*, 5 B.R. at 442–43. The financial condition of the *debtor* is irrelevant in determining whether a payment is in the nature of support. Certainly Congress was aware that a debtor in bankruptcy will have suffered a constantly worsening financial condition. As discussed above, the structure of § 523(a)(5) shows that Congress intended that this factor not be considered.").

The Tenth Circuit is the home court for *In re Warner*, 5 B.R. 434, 6 B.C.D. 788, B.L.R. (CCH) ¶ 67,631 (BC Utah 1980). It is helpful to summarize that seminal ruling that has provoked so much discussion. *Warner* involved the resolution of two cases involving a companion issue, one under the former Bankruptcy Act and the second under the Code. Both cases involved obligations imposed by state court divorce decrees, not by agreement. The court framed the present issue: "should the court consider evidence of the parties' relevant financial circumstances since the entry of the decree of divorce?" 5 B.R. at 436. The court first decided that the debt was imposed for support and maintenance. Then the court dealt with the tension it perceived existing between the legislative mandate for the nondischargeability of spousal and child support or maintenance and the debtor's fresh start:

> This present determination of the nature of the debt in light of possibly changed circumstances is necessary to enforce the general purpose of the bankruptcy laws in providing relief for the debtor. The intent of both section 17(a)(7), former 11 U.S.C. § 35a(7), and 11 U.S.C. § 523(a)(5) is to insure that the debtor's dependents will not be left destitute and that the debtor will not be relieved of his legal obligation of support. However, if, for example, a state court imposed an obligation on the debtor based on his spouse's need for support years ago when the divorce was granted, but in light of changed circumstances, the spouse today earns more than the debtor and needs no support from the debtor, it would defeat the policy behind the bankruptcy laws to hold the debt nondischargeable. When one considers

that according to the statutory provisions, any debt, not just traditional alimony payments, can be found to be support and thus nondischargeable, the potentially unfair burden on the debtor, if only the original circumstances were considered, might effectively abrogate his fresh start in a situation where no countervailing necessity of support exists. Thus, evidence subsequent to the divorce decree must be considered by the bankruptcy court to insure a fresh start for the debtor in the absence of an actual need for support by his former spouse or children.

See *In re Warner*, 5 B.R. at 442–443.

ELEVENTH CIRCUIT—This circuit strongly supports the majority view. *In re Harrell*, 23 B.R. 423, *aff'd in part, reversed in part* 33 B.R. 989, *aff'd* 754 F.2d 902 (11th Cir.1985).

The issues before the bankruptcy court in *In re Harrell*, on Mr. Harrell's Complaint to Determine Dischargeability, were:

(1) whether at the time Mr. Harrell and Mrs. Sharp entered into the September 10, 1971, separation agreement, ... there was a present need that alimony and child support be paid and whether this need was in effect at the time of filing of the debtor's Chapter 7 petition on October 17, 1980;

(2) what amount of money was the debtor obligated to give his son for his support and education; and

(3) whether this court could and to what extent it should modify the parties' separation agreement.

See *In re Harrell*, 23 B.R. at 424.

In its analysis of the facts, the bankruptcy court compared the financial status of Mrs. Sharp at the time of separation and subsequent divorce and noted she had completed one year of college and was unemployed, to her current financial situation, which revealed that she was a certified public accountant with an expected income of $30,000 for 1982 and was a co-owner of a home with her new husband. Since Mrs. Sharp had remarried in June 1975, thereby terminating Mr. Harrell's obligation to pro-

vide alimony, the alimony arrearages prior to 1975 were at issue.

The bankruptcy court, in holding that the alimony arrearages were dischargeable, did so because of the change of circumstances.

The Court is presented with an interesting dilemma. It is difficult to conclude that in a situation in which a party has remarried a present need for alimony exists. In fact, it is arguable that what once was alimony has lost its character as alimony due to change of circumstances, indicating support is no longer needed. This Court does not wish to create a precedent whereby debtors need only wait for their spouses to remarry to be relieved of any obligation they have to fund arrearages in alimony, as such a holding would militate against the clear Congressional policy of not allowing the discharge of alimony as evidenced by 11 U.S.C. §§ 523(a)(5) and 1328(a)(2). However, this policy must be balanced against the overriding Congressional policy contained in the Bankruptcy Code of providing a debtor with a "fresh start." In the instant case, Mrs. Sharp's de minimis present need for alimony, when balanced against the Congressional policy providing a debtor a "fresh start" results in the conclusion that the alimony arrearages that Mr. Harrell owes to Mrs. Sharp are dischargeable under the peculiar facts and circumstances of the instant case.

See *In re Harrell*, 23 B.R. at 424–25.

In addressing the issue of dischargeability of the child support owed by Mr. Harrell, the court again considered the "present need" of the recipient party and stated:

There clearly is a present need on Mr. Harrell's son's behalf for the receipt of support while attending school. Furthermore, this Court finds that there was a need for child support at the time the debtor and Mrs. Sharp entered into their separation agreement. Accordingly, the arrearage of child support which Mr. Harrell owed at the time of the filing of his voluntary petition under Chapter 7 of the Bankruptcy Code is hereby declared to be nondischargeable.

See *In re Harrell*, 23 B.R. at 425.

On appeal, the District Court affirmed in part holding that the alimony arrearages were not dischargeable, but reversed the trial court's conclusion that it had the jurisdiction to modify a debtor's obligation for child support. See *In re Harrell*, 33 B.R. 989, 993 (N.D.Ga.1983). The court rejected the balancing analysis used by the bankruptcy court, as well as by *In re Warner*, 5 B.R. 434, 6 B.C.D. 788 (BC Utah 1980). Noting that by creating an exception to the general rule of discharge, Congress implicitly resolved the balancing of the very interests involved and did not in any manner manifest an intention that bankruptcy courts embark on the balancing of these policies. See *id.* at 993 *noting Benz v. Nelson*, 20 B.R. 1008, 1011–12 (M.D.Tenn. 1982). The court went on to state:

The bankruptcy court's conclusion that "a genuine issue of material fact exists as to whether the debtor's spouse or child are in present need of the above-mentioned arrearages" is immaterial, therefore, to an inquiry under section 523(a)(5). There is no continuing obligation presented here; rather, the facts demonstrate that an arrearage that has accumulated prior to bankruptcy and the debtor's obligation could not be classified as anything other than alimony, support, or maintenance. Therefore, the court below erred in denying defendant's motion for summary judgment. Accordingly, the bankruptcy court's discharge of pre-petition alimony arrearages owing by debtor to defendant is hereby REVERSED.

See *In re Harrell*, 33 B.R. at 993.

The District Court affirmed the bankruptcy court to the extent that it held that any arrearage of child support owed by the debtor is non-dischargeable. See *id.* at 995. However, the court stated the bankruptcy court has gone too far in its inquiry.

The [bankruptcy] court, however, did not stop there. The court, after finding the child support arrearage nondischargeable, stated:

The Court reminds the debtor of his representations that as his economic circumstances improve, he would provide further assistance to his son toward meeting his educational expenses. At any time that there is a material change in the debtor's economic circumstances, the debtor's son may seek an increase in the $300 per month payments which he is to receive from the debtor commencing October 1, 1982.

*See In re Harrell,* 33 B.R. at 995–96. The District Court had stated earlier in its decision that the bankruptcy court has "no jurisdiction to set itself up as a bankrupt's domestic relations court by first establishing a child support obligation, and then reserving power to modify it based on changed conditions." *In re Harrell,* 33 B.R. at 995. Although the District Court affirmed the decision that the child support debt was nondischargeable, the court reversed the bankruptcy court's action of continued inquiry.

Insofar as the bankruptcy court went beyond its determination as to whether an agreement to provide educational expenses is maintenance and support, by inquiring into the interpretation of paragraph 3(c) of the separation agreement and thereupon translating its interpretation into a dollar amount, the bankruptcy court's action is hereby REVERSED.

*See In re Harrell,* 33 B.R. at 995.

On appeal by the debtor to the Court of Appeals, the Court concluded that the obligations to pay accrued alimony arrearages and post-majority child support and educational expenses were nondischargeable. *See In re Harrell,* 754 F.2d 902 (11th Cir. 1985). On the question concerning dischargeability of post-majority educational expenses and child support, the Court rejected the debtor's contention that an obligation is "actually in the nature of support" only if it could have been imposed under the relevant state law legal duty of support. The Court agreed with the holding of *Boyle v. Donovan,* 724 F.2d 681 (8th Cir.1984), that because the parties had intended their agreement to function as support, the fact that state law did not require

the debtor to undertake his obligation was irrelevant. *See In re Harrell,* 754 F.2d at 905.

The debtor's contention concerning the alimony arrearages was that "the bankruptcy court should assess a divorced spouse's needs and arrive at the precise amount that the spouse would require for support." *See In re Harrell,* 754 F.2d at 906. The bankruptcy court had accepted the debtor's proposition and followed the reasoning of *In re Warner,* 5 B.R. 434, 6 B.C.D. 788 (BC Utah 1980), which stated:

[E]ven if the debt was originally imposed on the basis of the need of the spouse or children, the debt cannot be held nondischargeable unless at the time of filing there exists a present need by the spouse or children that the debt be paid.

*See In re Harrell,* 754 F.2d at 906, *quoting In re Warner,* 5 B.R. at 442. The court in rejecting *Warner* stated:

The language used by Congress in § 523(a)(5) requires bankruptcy courts to determine nothing more than whether the support label accurately reflects that the obligation at issue is "actually in the *nature* of alimony, maintenance, or support." The statutory language suggests a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the *nature* of support. The language does not suggest a precise inquiry into financial circumstances to determine precise levels of need or support; nor does the statutory language contemplate an ongoing assessment of need as circumstances change.

*See In re Harrell,* 754 F.2d at 906. The court went on the conclude:

Thus, there will be no necessity for a precise investigation of the spouse's circumstances to determine the appropriate level of need or support. It will not be relevant that the circumstances of the parties may have changed, e.g., the spouse's need may have been reduced at the time the Chapter VII petition is filed. Thus, limited to its proper role, the bankruptcy court will not duplicate the func-

tions of state domestic relations courts, and its rulings will impinge on state domestic relations issues in the most limited manner possible.

. Once the bankruptcy court in this case concluded that the alimony payments were "actually in the nature of alimony," its task was at an end.

*In re Harrell*, 754 F.2d at 907.